**UNION PACIFIC CORPORATION,**
Plaintiff–Appellee,

v.

**The UNITED STATES, Defendant–Appellant.**

No. 93–5035.

United States Court of Appeals,
Federal Circuit.

Sept. 17, 1993.

John B. Jones, Jr., Covington & Burling, of Washington, DC, argued for plaintiff-appellee. With him on the brief was J. Michael Hemmer.

David I. Pincus, Atty., Dept. of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were James A. Burton, Acting Asst. Atty. Gen., Gary R. Allen and Nancy G. Morgan, Attys. Also on the brief was Michael L. Paup, Acting Asst. Atty. Gen.

Janet L. Bartelmay, Ass'n of American Railroads, of Washington, DC, was on the brief for amicus curiae, Ass'n of American Railroads.

Before MAYER, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

The United States Court of Federal Claims determined that the Union Pacific Corporation (the Corporation) was not an employer under the terms of the Railroad Retirement Tax Act. 26 U.S.C. §§ 3201–3233 (1988). Therefore the trial court ordered the United States to refund railroad retirement taxes to the Corporation. *Union Pacific Corporation v. United States*, 26 Cl. Ct. 739 (1992). Because the Corporation is not "under common control" with the Union Pacific Railroad Company (the Railroad), this court affirms.

## BACKGROUND

In 1969, the Railroad, headquartered in Omaha, Nebraska, reorganized to diversify into non-transportation ventures. Thus, a new corporation, the Union Pacific Corporation, was born in New York City.

This new Corporation engaged in many business ventures unrelated to the Railroad. By 1979, the tax year at issue, the Corporation, owned, directly or indirectly, all of the common stock of thirty-six subsidiaries. These subsidiaries included four major operating companies engaged in transportation, energy, and natural resources enterprises. Within two years of its inception, the Corporation had acquired all of the Railroad's stock. The Railroad was one of the Corporation's wholly owned subsidiaries.

Under the 1969 reorganization, many officers of the Railroad became employees of the Corporation. In 1979, for instance, many officers of the Corporation were also officers of the wholly-owned railroad subsidiary. Eighteen directors of the Corporation's twen-

ty-person board also served on the Railroad's board of directors. For these and its other employees, the Corporation paid taxes under the Federal Insurance Contributions Act (FICA). These FICA taxes were lower than the tax rates for railroad employees under the Railroad Retirement Tax Act (RRTA). *Compare* 26 U.S.C. §§ 3111(a), (b) with 26 U.S.C. §§ 3221(a)–(d).

In July 1983, the Internal Revenue Service issued a deficiency notice against the Corporation for non-payment of RRTA taxes on its employees. The Corporation paid the RRTA taxes and promptly sought a refund in the Court of Federal Claims. The trial court granted summary judgment in favor of Union Pacific Corporation. After a thorough analysis of the RRTA, the trial court concluded that the Corporation was not an "employer" as defined by the RRTA. 26 U.S.C. § 3231(a). The United States appeals.

## DISCUSSION

 This court affirms a grant of summary judgment when the moving party shows the absence of genuine disputes of material fact and entitlement to judgment as a matter of law. *Armco, Inc. v. Cyclops Corp.,* 791 F.2d 147, 149 (Fed.Cir.1986); Fed. R.Civ.P. 56(c). On review of a grant of summary judgment, this court construes facts in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### The Railroad Retirement Tax Act

 The RRTA requires employers within the Act's definition to pay taxes and to collect contributions from their employees. Section 3231(a) of title 26 defines an RRTA employer:

(a) Employer

For purposes of this chapter the term "employer" means any carrier (as defined in subsection (g)), and any company which is directly or indirectly owned or controlled by one or more such carriers or *under common control* therewith, and which operates any equipment or facility or performs any service (except trucking service,

casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad....

Internal Revenue Code of 1954, 26 U.S.C. § 3231 (emphasis added).

To qualify as an "employer" under RRTA, a company that is not a railroad must have one of two types of relationships with a railroad carrier. The company must be either "directly or indirectly owned or controlled by one or more such carriers" or "under common control" with a carrier. 26 U.S.C. § 3231(a). In addition, the company must "perform[ ] any service [other than a trucking or casual service] ... in connection with the transportation of passengers or property by railroad." *Id.*

This court faces only the issue of whether the Corporation was "under common control" with its wholly-owned subsidiary, the Railroad. The United States does not assert that the Corporation was "directly or indirectly owned or controlled by" a carrier, nor that the Corporation was itself a carrier under section 3231(g).

 On this question of statutory interpretation, the language of the statute itself governs. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975). Unless otherwise defined, statutory words carry their ordinary, contemporary, and common meaning. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Although the Supreme Court counsels to construe any reasonable doubts about the meaning of a tax statute in favor of the taxpayer, *Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211 (1917), the RRTA language presents few, if any, doubts on the question before this court.

 The term "under common control" does not usually apply to two companies in a parent-subsidiary relationship. These words—"under common control"—convey a meaning of mutual subordinance to a controlling principal. A company which controls

another is not "under common control" with its subsidiary. Rather two companies most naturally fit within the term "under common control" when occupying parallel positions as subsidiaries controlled by a common parent. *See, e.g., Utah Copper Co. v. Railroad Retirement Bd.,* 129 F.2d 358, 363 (10th Cir.) *cert. denied,* 317 U.S. 687, 63 S.Ct. 258, 87 L.Ed. 550 (1942) (carrier and sibling corporation owned by parent company are "under common control"). Within the meaning of section 3231(a), the Court of Federal Claims was correct:

> Necessary to a finding of common control is the existence of corporate entities ... which are in parallel position, both controlled by a single additional corporate entity, such as subsidiaries owned by a common parent.

*Union Pacific,* 26 Cl.Ct. at 750.

■ The statutory context of the phrase "under common control" also informs its meaning. The meaning of statutory terms should not render other words and phrases within the statute superfluous. *See, e.g., Moskal v. United States,* 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990); *McDonald v. Thompson,* 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164 (1938).

In the RRTA, the words "under common control" appear in the context of a larger phrase—"any company directly or indirectly owned or controlled by one or more such carriers or under common control therewith." The meaning of "under common control" should not render meaningless other words within this entire phrase. Therefore, the statute should allow situations where corporate entities are under common control without being directly or indirectly owned by a carrier. Otherwise the terms "under common control" would encompass, and render needless, the rest of the statutory phrase.

■ If the words "under common control" covered a parent company's relation to its subsidiary, the statute would have no need for the reference to companies "directly or indirectly owned or controlled by one or more such carriers." A parent corporation clearly "directly or indirectly own[s] or con-

trol[s]" its subsidiaries. A meaning of "under common control" that encompassed parent-subsidiary corporate relationships would render other language of the RRTA impotent. Thus, this principle of statutory construction also counsels that the words "under common control" do not include parent-subsidiary relationships.

■ In sum, the RRTA did not subject all companies related to railroads to the tax, but instead imposed the tax on companies "intimately related to the transportation of passengers or property by railroad in the United States." S.Rep. No. 818, 75th Cong., 1st Sess. 4 (1937), *reprinted in* 1939–2 C.B. 629, 632. Unlike the Securities Act of 1933 or the Securities Exchange Act of 1934, the RRTA—passed by the same Congress as these Acts—does not contain language covering any entity "directly or indirectly *controlling* or controlled by or under common control with" another entity. *See* 15 U.S.C. § 78*l* (b)(1)–(2) (1988) (emphasis added); *see also* 15 U.S.C. § 77b(1), (3) (1988). If the RRTA had included "controlling" language, it would cover as a railroad "employer" a parent company whose subsidiary is a carrier. It does not. Instead the RRTA includes a narrower set of corporate relationships within the term "employer." The RRTA does not include as an "employer" a management holding company which owns a railroad as a subsidiary.

■ In this case, the Corporation is the parent and the Railroad a subsidiary. The Corporation owns all of the stock of the Railroad. Thus, the Corporation and the Railroad are not "under common control." The subsidiary Railroad does not control its parent, the Corporation. Therefore, the Corporation is not an "employer" within the definition in section 3231(a) of the RRTA.

■ The Corporation and the Railroad share many officers and directors. These shared leaders do not subject the two separate corporate entities to "common control" under section 3231(a). By its terms, the RRTA speaks of "any *company* ... directly or indirectly ... controlled by one or more such [corporate] carriers." Section 3231(a) (emphasis added). Thus, the RRTA refers

to corporate entities controlling (or subject to common control with) other corporations, not to individuals' role in directing corporate affairs.

Moreover, corporate directors or officers serve the shareholders of the corporate entity or as authorized by the corporate charter. The same individual may serve separate corporations within those constraints. Therefore individuals acting as directors for the Corporation have obligations different from the same individuals' obligations when acting as directors for the Railroad. Thus, the same individuals are subject to different legal obligations when acting for separate corporate entities. The individuals do not "control" the corporations in the sense that section 3231(a) uses that word. The shared individuals within the leadership of these separate corporations do not make the Corporation an employer under section 3231(a).

■■■■ The shareholders of the Corporation exercise some control over the policies of that entity, which in turn, exercises some control over the policies of the Railroad. The ultimate authority of the shareholders of the Corporation, however, does not subject the two corporate entities to "common control" under section 3231(a). To reiterate, the RRTA speaks of inter-corporate control relationships, not of intra-corporate control mechanisms. The terms "under common control" within the RRTA simply do not refer to shareholder-to-corporation relationships, but to corporation-to-corporation relationships. Reading "under common control" to include control by a parent company's shareholders would also render superfluous the Act's explicit reference to "controlled by one or more such carriers." The ultimate influence of its shareholders does not make the Corporation an "employer" under section 3231(a).

In *Standard Office Building Corp. v. United States*, 819 F.2d 1371 (7th Cir.1987), our sister circuit suggested in dicta that the RRTA definition of "employer" might apply to "a wholly owned subsidiary to which a railroad spun off its entire nonoperating staff." *Id.* at 1376. This case is not the hypothetical mentioned in *Standard Office.* A wholly owned subsidiary would fall within the clear terms of section 3231(a) ("any company … controlled by one or more such carriers"); a parent company which owns a railroad subsidiary does not.

Moreover, the record in this case does not suggest, as does the *Standard Office* hypothetical, that the Railroad set up the Corporation to escape higher RRTA taxes. Shared leadership between the separate corporations does not alone create an inference of intent to evade tax obligations.

## CONCLUSION

In sum, the Court of Federal Claims correctly determined that the Corporation and the Railroad are not "under common control" within the meaning of the RRTA. The trial court properly ordered a refund of RRTA taxes to the Corporation. Because the Corporation and the Railroad are not "under common control," this court does not reach the question of whether the Corporation performed services "in connection with the transportation of passengers or property by railroad." For the foregoing reasons, this court affirms the decision granting summary judgment in favor of Union Pacific Corporation.

## COSTS

Each party shall bear its own costs.

AFFIRMED.