**John D. HOLLEY, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 95–5134.**

United States Court of Appeals, Federal Circuit.

Sept. 19, 1997.

Guy J. Ferrante, King & Everhard, P.C., Falls Church, VA, argued for Plaintiff–Appellee.

Edmund W. Chapman, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director. Of counsel was LTC David Hayden and Major Douglas Mickle, Department of the Army, Arlington, VA. Counsel is David B. Stinson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC.

Before NEWMAN, MICHEL, and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The government appeals the decision of the United States Court of Federal Claims, *Holley v. United States*, 32 Fed. Cl. 265 (1994), ruling that John D. Holley, Jr. was illegally discharged from military service; the court ordered back pay, reinstatement, and associated benefits.

The discharge was conducted in accordance with the statutory and regulatory rules applicable to officers having less than five years of commissioned service. We conclude that these rules and their application in this case did not violate Mr. Holley's statutory, regulatory, or constitutional rights. The decision of the Court of Federal Claims is reversed.

## BACKGROUND

The two events that led to Mr. Holley's discharge occurred soon after his assignment in Germany, following his graduation from the United States Military Academy in June 1986. The first event, in May 1987, was a

conversation at a party during which Mr. Holley implied that illegal drugs would be available at a party at his house. The second event, in December 1987, was a conversation between Mr. Holley and a non-commissioned officer during which Mr. Holley stated that he had smoked an illegal drug during the weekend and had taken a drug test wherein he had tried to contaminate the sample. Details of these events are set forth in the opinion of the Court of Federal Claims; that they occurred is not disputed on this appeal, although Mr. Holley in his brief challenges the merits of the charges.

On March 10, 1988 Mr. Holley was given a Letter of Reprimand by Major General Joulwan, the letter stating that "these incidents raise serious questions about your judgment and future value to the Army." In an Officer Evaluation Report dated March 23, 1988 his battalion commander, Lieutenant Colonel Scales, described him as a "technically competent, enthusiastic leader," referred to his "selfless dedication" and "caring, concerned attitude for his men," but rated him last of the lieutenants in the battalion, despite "all of the excellent things that 1LT Holley has accomplished in the recent months," because of his "off duty ... lack of good judgment" and the "stigma" of this misconduct. LTC Scales expressed concern that these actions had "somewhat discredited him as a commissioned officer and future leader."

In the ensuing months of 1988 Mr. Holley received an "outstanding" officer evaluation, was awarded three Army Achievement Medals, and had a spotless record. In May 1988 LTC Scales described him as "a completely dedicated and responsible officer" and stated that "Lieutenant Holley's present duty performance alleviates my past concerns about his responsibility and maturity and identify him as the exceptional leader he is."

On December 1, 1988 Mr. Holley was notified of the Army's "Initiation of Elimination" action, the notice referring to the reprimand and the low evaluation of the previous March. The notice required him to show cause for retention in light of his "lack of good judgment," "acts of personal misconduct," and "conduct unbecoming an officer." The notice stated that a general discharge was being recommended, and that there would not be referral to a board of inquiry[1] unless the discharge were under other than honorable conditions. The notice offered the assistance of counsel in submitting a written statement or rebuttal, and offered him the opportunity to resign.

Mr. Holley submitted a written statement on February 13, 1989. He "took full responsibility for these improprieties, and have since then worked very hard to overcome them, and to prove myself as an asset to the Officer's Corps." He outlined his excellent record and performance since these events had occurred, well over a year earlier. Lieutenant Colonel Scales wrote a Request for Retention dated February 13, 1989, stating that Mr. Holley's "response to counseling and mentoring has been superb" and that "his manner of performance at this point ranks with the very best of my 25 lieutenants."

On March 31, 1989 the discharge was approved by the Assistant Secretary of the Army. The discharge was classified as "General (Under Honorable Conditions)." The reason stated on the Certificate of Release or Discharge from Active Duty (DD Form 214) was "Misconduct Moral or Professional Dereliction or in Interest of National Security." No referral was made to a board of inquiry.

On April 9, 1992 Mr. Holley filed suit in the Court of Federal Claims, raising statutory, regulatory, and constitutional issues. He stated that he had an inadequate opportunity to defend against the discharge in that the Army did not conduct a hearing, and that a hearing was required in view of the stigmatizing nature of the general discharge and the derogatory statement on the official discharge form. He requested back pay and reinstatement, and correction of his military records.

The Court of Federal Claims concluded that the discharge was procedurally defective, and that the Army abused its discretion

---

1. A board of inquiry is a formal hearing procedure wherein the service member may be represented by counsel and present witnesses. *See* Army Regulation 635–100, Section XI, 5–32

("The purpose of a board of inquiry is to afford the respondent a fair and impartial hearing to determine whether he should be retained in the Army.")

in not directing a hearing before a board of inquiry. The court relied on certain statutory requirements and judicial rulings, and gave dispositive weight to the stigmatizing nature and derogatory terms of the discharge. The government appeals this ruling on its merits, and also argues that the Court of Federal Claims did not have jurisdiction. The government further argues that even if the issue of whether a stigmatizing discharge requires a hearing were within the court's jurisdiction and were decided in Mr. Holley's favor, it would at most entitle him to the remedy of clearing his name, a remedy that the government states is not available in the Court of Federal Claims. Thus the government raises threshold challenges to the jurisdiction of the trial court, asserting that on any theory of the case the court did not have jurisdiction of any of the claims and issues raised by Mr. Holley.

## I

Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983) (jurisdiction is established by the plaintiff's complaint); *Allied–General Nuclear Services v. United States,* 839 F.2d 1572, 1575 (Fed.Cir.1988) (determining subject matter jurisdiction by assessing the complaint and deciding any relevant threshold issues). Thus it is the plaintiff's statement of the claim that determines whether the case is within the competence of the court, without consideration of any allegations made by the plaintiff relating to anticipated defenses. *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). *See* C. Wright, *The Law of Federal Courts* § 7 (4th ed.1983).

## A

Mr. Holley's complaint states that jurisdiction is based on 28 U.S.C. § 1491 (the Tucker Act) and 37 U.S.C. § 204, the military pay act. The government states that Mr. Holley has no basis for invoking the Tucker Act, which provides:

28 U.S.C. § 1491(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department. . . .

Tucker Act jurisdiction requires not only a claim against the United States, but also requires, based on principles of "sovereign immunity," that there be a separate money-mandating statute the violation of which supports a claim for damages against the United States. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967). It is well established that 37 U.S.C. § 204 ("Pay and Allowances of the Uniformed Services") serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge. 37 U.S.C. § 204 "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." *Sanders v. United States,* 219 Ct. Cl. 285, 594 F.2d 804, 810 (1979) (*en banc*). If the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction.

Tucker Act claims asserting wrongful military discharge have arisen in a variety of factual and legal situations. Some have been based on violations of statute, some on noncompliance with regulations, and some have raised constitutional issues. Illustrating a regulatory issue, in *Sanders,* 594 F.2d at 810–11, the Court of Claims held that when an Officer Evaluation Report was not prepared in accordance with regulation, a discharge based thereon was subject to remedy under the Tucker Act. Illustrating a constitutional issue, in *Woodward v. United States,* 871 F.2d 1068, 1073 (Fed.Cir.1989), a discretionary agency action in releasing a reserve officer from active duty was reviewed to determine if the Constitution had been violated, this court observing that "the Claims Court was correct in holding that it had jurisdiction in a claim for money damages to consider Woodward's allegation of violations of constitutional rights." Similarly in *Padula v. Webster,* 822 F.2d 97, 101 (D.C.Cir.1987) the

court remarked that "even where agency action is 'committed to agency discretion by law,' review is still available to determine if the Constitution has been violated" (citations omitted). In *Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407, 412 (1982) the Court of Claims recognized that "executive discretion must be subject at least to constitutional review" (footnote omitted). *See also, e.g., Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995) (involuntary discharge based on harmful procedural error actionable under the Tucker Act and 37 U.S.C. § 204); *Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990) (claim based on improper release from active reserve service is within the jurisdiction of the Court of Federal Claims based on 37 U.S.C. § 204); *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 831 (1979) (claim under § 204 and the Tucker Act for back pay for military service in the position to which appointed). It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief. The Court of Federal Claims, like the Court of Claims before it, has jurisdiction of such claims.

The government relies on *Hamlet v. United States,* 63 F.3d 1097 (Fed.Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996), to support its argument that there is not Tucker Act jurisdiction of Mr. Holley's claim. Ms. Hamlet was employed by the Agricultural Stabilization and Conservation Service, an agency supported by the United States Department of Agriculture, and thus she was not an "employee" as defined in the Civil Service Reform Act, she was excluded from the Back Pay Act, and she had no claim for breach of contract. With no statutory or regulatory or contractual right to money damages, the court held that she could not invoke the jurisdiction of the Court of Federal Claims. In *Hamlet* the Federal Circuit reaffirmed that there must be an "underlying statutory ... right to recovery" to support jurisdiction in the Court of Federal Claims, and that absent such right Ms. Hamlet's assertions of violations of the First and Fifth Amendments "stood alone" and did not of themselves provide Tucker Act jurisdiction. The ruling in *Hamlet* was not that the Court of Federal Claims could not consider constitutional issues; the ruling was

simply that Ms. Hamlet could not present a Tucker Act claim and therefore did not have access to relief in the Court of Federal Claims.

In contrast, Mr. Holley's constitutional issue does not stand alone, but is a factor in the claim for which Tucker Act jurisdiction is established. The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful. The determination of Mr. Holley's entitlement to remedy under 37 U.S.C. § 204 may include consideration of whether his removal violated constitutional rights. The government's position to the contrary, although vigorously pressed, is incorrect. "[M]en and women in the Armed forces do not leave constitutional safeguards and judicial protection behind when they enter military service." *Weiss v. United States,* 510 U.S. 163, 194, 114 S.Ct. 752, 769, 127 L.Ed.2d 1 (1994) (Ginsburg, J., concurring). *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367–68, 76 L.Ed.2d 586 (1983) (military personnel retain basic constitutional rights).

**B**

▋ The government also proposes that Mr. Holley is not really seeking back pay and reinstatement but seeks only to clear his name. Mr. Holley does indeed seek to clear his name, and has requested this ancillary relief. However, he has also pled a monetary claim that satisfies the jurisdictional requirements of the Tucker Act. Even were the clearing of his name his primary motivation, he can not be barred from access to the Court of Federal Claims upon stating a claim for monetary damages and ancillary relief that includes correcting his military records.

For this theory the government relies on *Fiorentino v. United States,* 221 Ct.Cl. 545, 607 F.2d 963 (1979), wherein the Court of Claims held that an employee in the excepted service who was removable at will, with no right of judicial review under the Civil Service Reform Act, had no basis under the Tucker Act on which to seek back pay, rein-

statement, or the cleansing of his employment records. The court held that even if Mr. Fiorentino were maligned by derogatory information in his employment file, in the absence of a money-mandating statute his only remedy was an action to cleanse the file. Such an action, standing alone, could not be brought in the Court of Claims. However, the law governing the civilian employee at will in the excepted service does not govern other federal employees who may have rights controlled by other laws, or decide the court's jurisdiction under other laws. *See United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The argument that Mr. Holley must be excluded from the Court of Federal Claims because he also seeks to clear his name is without substance.

### C

■ The government further argues that even if there should be Tucker Act jurisdiction of the issue of wrongful military discharge, the Court of Federal Claims did not have jurisdiction to consider Mr. Holley's argument that he was entitled to a hearing before a board of inquiry as a matter of constitutional due process.

Claimants in the Court of Federal Claims have the right to raise issues based on asserted procedural violations, whether violative of the Constitution or of statute or regulation, to support their claims for monetary relief. As we have discussed, the Court of Federal Claims has full authority to consider constitutional issues relevant to an appeal that is properly before it. Indeed, a procedural violation asserted to be of constitutional dimension is of particular judicial concern. As the Court stated in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986), a "serious constitutional question" would arise if a judicial forum for constitutional claims were denied, quoting *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975).

Mr. Holley was not barred from raising, and the Court of Federal Claims was not barred from considering, whether the proce-

dures of his discharge were in violation of statutory, regulatory, or constitutional rights.

### D

In summary, the Court of Federal Claims had jurisdiction of Mr. Holley's claim under the Tucker Act, including authority to consider not only the asserted violations of statute and regulation and the exercise of agency discretion, but also the constitutional issue of due process.

### II

By statute a commissioned officer proposed for discharge is assured a pre-discharge hearing before a board of inquiry, except for officers in "probationary" status. An officer with less than five years of service is described as probationary. For such officer the statute delegates regulatory authority to the agency. As implemented by the Secretary of the Army for this category of officer, no hearing before a board of inquiry is offered unless the discharge is upon other than honorable conditions. In Mr. Holley's case no such hearing was held.

The Court of Federal Claims held that when the discharge is stigmatizing, as is a general discharge albeit "under honorable conditions,"[2] and the grounds derogatory, the denial of a hearing before a board of inquiry is contrary to statute and an abuse of discretion.

### A

■ The government again argues that this issue is not subject to review in the Court of Federal Claims, now stressing the special deference that is given to decisions of military officials in managing the armed forces. In *Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986), the Supreme Court discussed the basis of deferential constitutional review of discretionary acts of military officials, observing that "the military must insist upon a respect for duty and discipline without counterpart in

---

**2.** Army Regulation 635–200, Section III, § 37b(1) ("A general discharge is a separation from the Army under honorable conditions. When authorized it is issued to a soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge.")

civilian life." *Id.* at 507, 106 S.Ct. at 1313 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591 (1975)).

Our concern, however, is not for the correctness of the Army's decision to separate Mr. Holley based on his infractions; our concern is solely whether the decision to do so without a full hearing before a board of inquiry violated any statute, regulation, or the fundamental due process that the Constitution provides to all persons. The issue of discharge procedure is not one of achieving legitimate military ends, *Goldman*, 475 U.S. at 506, 106 S.Ct. at 1312–13, but a matter of compliance with law. Review of compliance with statute, regulation, and the Constitution is the judicial responsibility. *Cf. Padula v. Webster*, 822 F.2d at 101 (discretionary act of agency in employment action is subject to constitutional review). Indeed, when a constitutional challenge is raised to the implementation of statute or regulation, denial of judicial review of the challenged provisions would itself raise a "serious constitutional question." *Salfi*, 422 U.S. at 762, 95 S.Ct. at 2465.

**B**

■ The Court of Federal Claims observed that Mr. Holley's notice of Initiation of Elimination did not state the statute under which he was proposed for discharge. Mr. Holley argued that he was removed under 10 U.S.C. §§ 1181–1187, which relate generally to removal of a commissioned officer for cause. The court observed, and the government does not dispute, that the hearing requirements of these provisions was not met, for § 1185 provides for board of inquiry proceedings and the right of the officer to appear in person at such proceedings:

10 U.S.C. § 1185. Rights and procedures (a) Under regulations prescribed by the Secretary of Defense, each officer required under section 1181 of this title to show cause for retention on active duty—

(3) shall be allowed to appear in person and to be represented by counsel at proceedings before the board of inquiry;

The government states that these sections do not apply to "probationary" officers, and that this class is by statute subject to different treatment. We agree that this is the correct interpretation, despite any lack of clarity of the statute. Although §§ 1181–1187 are not by their terms limited to officers with more than five years of commissioned service, 10 U.S.C. § 630 is specific to the discharge of officers with less than five years of service:

**10 U.S.C. § 630. Discharge of regular commissioned officers with less than five years of active commissioned service**

. . .

The Secretary of the military department concerned, under regulations prescribed by the Secretary of Defense—

(1) may discharge any regular officer on the active duty list who—

(A) has less than five years of active commissioned service;

It is a well-settled canon of statutory construction that the provisions of a unified statutory scheme should be read in harmony, leaving no provision inoperative or superfluous or redundant or contradictory. *E.g., Moskal v. United States*, 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990); *Union Pacific Corp. v. United States*, 5 F.3d 523, 526 (Fed.Cir.1993). The only way to achieve that result is to read § 630 as a specific statutory provision that must be given effect as against the general provision of § 1185.

Section 630 is silent concerning board of inquiry proceedings for discharge of probationary officers. This distinction from § 1185 is made explicit in the implementing Army Regulation. AR 635–100 contains several relevant provisions, commencing with the following:

AR 635–100 ¶ 5–30b If the SCA [show cause authority] determines that the [probationary] officer should be separated with a general discharge, the SCA may refer the case to a Board of Officers or a Board of Inquiry, as determined appropriate, or submit the case to the Secretary concerned who will take a final action. If the SCA determines that the officer should be separated with an other than Honorable Discharge, the SCA shall refer the case directly to a Board of Inquiry. . . .

The Court of Federal Claims found a contradiction between these two sentences of ¶ 5–

30b, the first of which appears to allow for discretion in referring a general discharge to a board of inquiry, and the second of which makes such referral mandatory when the discharge is "other than Honorable." The court deemed the regulation unclear or ambiguous as to the intended procedure when the proposed discharge is general but under honorable conditions. However, an ensuing subsection of AR 635–100 is clear and unambiguous as to this specific aspect:

¶ 5–30b(2)(b) That if an honorable or general (under honorable conditions) discharge is recommended, there will be no Board of Inquiry held before the officer's case is forwarded to the Assistant Secretary of the Army....

This is the procedure that was followed with Mr. Holley. Although the Assistant Secretary, by ¶ 5–30c(2), is authorized to "direct (a) Retention, or (b) Discharge, or (c) Referral to a board of inquiry," and may overrule the action of the show cause authority, in Mr. Holley's case discharge was directed.

These regulations implement 10 U.S.C. § 630. The Court of Federal Claims interpreted these regulations as meaning that a hearing before a board of inquiry is not mandatory but is discretionary, for separation of a probationary officer by general discharge under honorable conditions. Mr. Holley was notified that he would not have a board of inquiry unless the discharge were under other than honorable conditions; this was in accordance with ¶ 5–30b(2)(b).

■ The Court of Federal Claims held that the Army was required to provide a board of inquiry in view of the stigmatizing nature of the general discharge and the derogatory statement of "Misconduct Moral or Professional Dereliction or In Interest of National Security" on Mr. Holley's DD Form 214. The court held that "If he has been stigmatized or there is some derogatory connotation associated with his discharge he was entitled, as of right, under the regulations and otherwise to a hearing prior to the issuance of such a discharge." *Holley*, 32 Fed. Cl. at 274.

The government argues that the court was in error, that 10 U.S.C. § 630 and AR 635–100 ¶ 5–30b authorize omission of a board of inquiry for a probationary officer who is subject to a discharge that is not dishonorable, and that no constitutional issue is involved because a probationary officer has no property or liberty interest in retention in the Army. In support of the argument that Mr. Holley has no constitutional entitlement to a pre-separation hearing the government cites *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977) for its holding that stigmatizing information does not produce entitlement under the Due Process Clause to a hearing for a nontenured city employee when the stigmatizing information is true, and *Guerra v. Scruggs*, 942 F.2d 270, 278–79 (4th Cir.1991), wherein the court held that discharge of an enlisted serviceman for drug offenses without a pre-discharge hearing before an administrative elimination board (although he was entitled to but did not request a hearing before the Army Discharge Review Board) implicated no liberty interest when the stigmatizing information was true. Mr. Holley distinguishes these cases by stating that although he does not deny that the events occurred, he disputes the conclusions drawn as stated on the DD Form 214. He states that his right to a hearing did not depend on a liberty or property interest in military service, but on due process of law, justice, and fairness. He also states that the stigmatizing discharge impaired a liberty interest.

We take note of the variety of judicial holdings, elaborated in scholarly reviews, on the issues of liberty and/or property interests in employment, in reputation, in military service, and many other areas. We do not here enter this discussion, for we conclude that 10 U.S.C. § 630 and AR 635–100 ¶ 5–30B, as enacted and as implemented in Mr. Holley's case, do not violate the fundamental protections of the Constitution. The threshold question is whether a general discharge under honorable conditions may be implemented for probationary officers solely with written notice and an opportunity to respond, but without a full adversary hearing, without violating the minimum process that is due under the circumstances.

Precedent teaches that minimum due process is not violated by the procedure followed in discharging Mr. Holley. *See Department*

*of Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) (minimum due process is met for employee discharge in security context by written notice and a pre-termination opportunity to respond). In *Codd v. Velger* the Court held that when the elements of a stigmatizing discharge are present, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" 429 U.S. at 627, 97 S.Ct. at 883–84 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). The Court concluded that "[w]hen we consider the nature of the interest sought to be protected, we believe the absence of any such allegation or finding [that the derogatory information was substantially false] is fatal to respondent's claim under the Due Process Clause that he should have been given a hearing." *Codd,* 429 U.S. at 627, 97 S.Ct. at 884. Applying these standards to Mr. Holley's situation, his termination did not violate due process, for he received notice of the charges and an opportunity to respond before the termination was implemented, as required by *Egan,* and it is conceded that the information was not false, as discussed in *Codd.*

Mr. Holley points to cases holding that when the military discharge is stigmatizing a board of inquiry or similar evidentiary hearing is required before the separation is implemented. The government responds that in those cases the servicemember was a career enlisted man with a regulatory entitlement to a hearing based on years of service, not a commissioned officer in probationary status. For example, in *Casey v. United States,* 8 Cl.Ct. 234, 241 (1985) the sergeant had seventeen years of service before he was honorably discharged based on alcohol abuse and failure of rehabilitation. Since the DOD regulations required granting a hearing before a board of officers to servicemen with over eight years of service when the issue was alcohol abuse, the court granted relief based on the Army's violation of this regulation. The court also held that the coded reason for the discharge was stigmatizing because it encompassed drug as well as alcohol abuse whereas there was no allegation of drug abuse. In *Faircloth v. United States,* 186 Ct.Cl. 133 (1968) the Navy regulations applicable to this serviceman's discharge included entitlement to a hearing. Since the regulations were not complied with, relief was granted. In *Keef v. United States,* 185 Ct.Cl. 454 (1968), although the serviceman had more than seventeen years of enlisted service, the court held that since there was no stigma attached to an honorable discharge for the convenience of the government, no constitutional right was violated by denial of a hearing before a board of officers. In *Sofranoff v. United States,* 165 Ct.Cl. 470, 478 (1964) the Marine Corps regulations gave the right to a hearing, in the circumstances that prevailed, before a Board of Medical Survey; the Court of Claims held that the hearing was obligatory and could not be bypassed by the commanding officer. In contrast, as a probationary officer Mr. Holley had no statutory or regulatory right to a hearing unless the discharge was on other than honorable conditions.

Mr. Holley points out that when an action is stigmatizing there is an enhanced right to a hearing. This is in accord with the Court's observation, in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), that when a person's "good name, reputation, honor or integrity [are] at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." In *Constantineau* the issue was the constitutionality of a state statute authorizing the posting in liquor outlets of the names of persons based on their excessive drinking. The Court observed that the affected persons were not given an opportunity to defend against the stigmatizing effect of the posting, and held the statute unconstitutional based on the denial of due process to the persons affected.

We entirely agree that stigma can not be imposed by government without due process of law. However, the procedures of AR 635–100 ¶ 5–30b are not analogous to the posting of names that was struck down in *Constantineau.* The Regulation requires notice of the reasons for the proposed action and the opportunity to respond and to rebut the charges. Legal counsel was offered, and the opportunity to resign. As we have discussed, minimum due process was met by this proce-

dure, and stigma based on truth, when accompanied by due process, can not be avoided.

Absent violation of statute, regulation, or the Constitution, the action of the Army must be sustained. The judgment of the Court of Federal Claims is reversed.

No costs.

*REVERSED.*