LB & B ASSOCIATES INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Sytronics, Inc., Defendant–Intervenor.

No. 05–1066L.

United States Court of Federal Claims.

Dec. 8, 2005.

Benjamin N. Thompson, Raleigh, NC, for plaintiff. Jennifer M. Miller and Christine F. Mayhew, Raleigh, NC, of counsel.

James D. Colt, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant.

Charles W. Mahan, Dayton, OH, for defendant-intervenor. Rena G. Sauer, Dayton, OH, of counsel.

## OPINION

FIRESTONE, Judge.

The present post-award bid protest was filed under 28 U.S.C. § 1491(b)(1) (2000). At issue is a Request for Proposal ("RFP") for a small business set-aside task order ("task order") to provide maintenance of flight simulation equipment to the United States Air Force ("Air Force"). The RFP was issued pursuant to a multi-award Indefinite Delivery/Indefinite Quantity ("ID/IQ") contract previously awarded by the Air Force in 2001. The underlying ID/IQ contract, known as Training Systems Acquisition II ("TSA II contract"), authorized the Air Force to issue task orders for Air Force simulation training products and services. The plaintiff, LB & B Associates Inc. ("LB & B"), was among the five small businesses and six large businesses that were selected under the 15–year TSA II contract. At the time it submitted its offer on the TSA II contract, LB & B certified that it was a small business under North American Industrial Classification System ("NAICS") code 336413, which is 1,000 employees. It is not disputed that LB & B is no longer a small business under the applicable NAICS code. Nonetheless, in submitting its proposal for the subject small business set-aside RFP, LB & B relied upon the size certification it had made in response to the TSA II contract in 2001. The Air Force determined that LB & B's proposal for the

subject task order represented "best value." However, prior to making an award, the Air Force filed a protest with the Small Business Administration's ("SBA") Area 2 Office of Government Contracting ("Area Office") to determine whether LB & B still qualified as a small business for purposes of the task order. The Area Office ruled in favor of LB & B and determined that LB & B could rely on its earlier certification. The Air Force appealed the Area Office decision to the SBA Office of Hearings and Appeals ("OHA"), which held on September 28, 2005 that the Air Force could request LB & B to re-certify and therefore LB & B's size could be determined as of the offer date specified in the task order RFP. As a consequence, LB & B was no longer eligible to receive the task order.

LB & B alleges that the OHA decision is inconsistent with SBA regulations and binding precedent and is thus arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The defendant, the United States ("government"), and the intervenor, Sytronics, Inc. ("Sytronics"), have moved to dismiss LB & B's protest for lack of jurisdiction pursuant to Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC"). In the alternative, the government and Sytronics argue that the SBA decision is rational and legally supported and must be upheld.

For the reasons that follow, the court holds that it has jurisdiction. On the merits, LB & B's protest is **DENIED**.

## BACKGROUND

### I. Background Facts

On January 29, 2001, the Air Force issued an RFP for a multi-award ID/IQ contract to be awarded to a mix of large and small businesses to provide flight simulation training products and services. This multi-award ID/IQ contract was identified as the TSA II contract. Compl., Ex. 1. As described in the executive summary accompanying the TSA II RFP, once the basic ID/IQ contracts had been awarded, "individual task orders/delivery orders" would be competed among the awardees, unless small business set-asides

applied. The executive summary also provided: "The basic structure of the overall contract will allow individual task/delivery orders to buy items or services [through a variety of contract types]." The TSA II contract contemplated a 15–year concurrent ordering and performance period. The TSA II contract was also partially set-aside for small businesses, with an applicable NAICS code 336413. Compl. Ex. 2.

On April 21, 2001, LB & B submitted an initial offer, including its certification of small business status, in response to the TSA II RFP. The Air Force made awards under TSA II to six large businesses and five small businesses, including LB & B.

LB & B was awarded two task orders under the TSA II ID/IQ contract that were set-aside for small businesses. LB & B was not asked to re-certify its size status in the RFPs for either of the two task orders.

On April 7, 2005, the Air Force issued the subject RFP for the RC–135 task order under the TSA II contract. As noted, the task order was for the maintenance of flight simulation equipment that the Air Force uses to train pilots. The task order was for services at Offut Air Base, Nebraska. The subject task order was set-aside for a small business under NAICS code 336413. In the proposal preparation instructions to the RC–135 task order RFP, the Air Force also required that offerors "[r]e-certify as to small business size under NAICS CODE 336413." RFP Section L, 6.1(e). The proposal preparation instructions described the task order as follows: "The resulting contract will be Fixed Price, IDIQ . . . . Period of performance is October 2005 through September 2015. The contract will consist of the basic year with nine (9) one year options." RFP Section L, 1.2.

Three approved suppliers, LB & B, KARTA, and Sytronics, submitted proposals in response to the task order RFP. KARTA and Sytronics were able to certify that, as of the time of the task order RFP, they were small businesses. LB & B referred to its 2001 size certification and did not re-certify its size at the time of its May 13, 2005 offer.

## II. Proceedings Before the SBA Area Office and Office of Hearings and Appeals

After receipt of the offers, the Air Force filed a protest with the SBA Area Office because the Air Force had credible information that LB & B was no longer small. The Air Force asked the Area Office to determine whether LB & B qualified as a small business for purposes of the task order. On June 28, 2005, the Area Office issued a size determination, stating that LB & B was a small business because it was small when it submitted its offer for the ID/IQ contract in April 2001. In support of its decision, the Area Office relied on the SBA's long-standing policy, now codified in 13 C.F.R. § 121.404(g) (2005), that a concern that qualifies as a small business at the time it receives a contract is considered a small business for the life of the contract. The Air Force appealed that determination to the SBA OHA on July 13, 2005. The OHA vacated the Area Office's decision and dismissed the Air Force's appeal as premature pursuant to 13 C.F.R. § 121.1004(e) (2000), because the Air Force had not yet selected the apparently successful offeror. On July 28, 2005, the Air Force announced that LB & B was the apparent successful offeror subject to the challenge of its small business status. The Air Force refiled its appeal with the Area Office on July 29, 2005. On August 18, 2005, the Area Office once again issued a size determination, which was based on LB & B's certification of its size in 2001. The Area Office rejected the Air Force's contention that the task order should be treated as a new contract and that a new certification was therefore required. The Air Force appealed the Area Office's size determination the following day to the OHA.

On appeal, the OHA held that the Area Office was required to determine LB & B's size status as of the date that the RFP for the RC–135 task order required re-certification to occur. *Size Appeal of LB & B Assocs., Inc.,* No. SIZ–4736, September 28, 2005.

The OHA judge noted that the appeal presented an issue of first impression. *Id.* at 12. The OHA judge distinguished the only

one other case involving task orders issued pursuant to ID/IQ contracts, *Size Appeal of Systems Resource Management, Inc.*, No. SIZ–4640, June 7, 2004. The OHA judge explained that the RFP in *Systems Resource Management* did not involve a request for re-certification; whereas, here, the subject task order RFP required that offerors re-certify their size status. *Id.* In addition, the OHA judge noted that *Systems Resource Management* was concerned with the issue of the timeliness of an appeal and did not squarely deal with the merits of the size issue.

In reversing the Area Office decision, the OHA judge held that the Area Office erred because: (1) the task order RFP was a solicitation for a new contract; (2) the task order RFP required re-certification; and (3) 13 C.F.R. § 121.405(a) requires an offeror to self-certify it is small under the standard specified in the solicitation. *Id.* at 18.

In finding that the task order was a separate procurement or new contract, the OHA judge determined, based on the definition of a procurement in the Federal Acquisition Regulations ("FAR")[1], that the TSA II RFP and contract did not meet the definition of a procurement without something more because the TSA II contract did not acquire services using appropriated funds, describe agency requirements, or establish agency needs. *Id.* at 15. As such, the OHA judge concluded that the "[TSA II] ID/IQ Contract is the *framework* for procurement. However, it is equally certain the *framework needs delivery orders to become a procurement*.... I find the [task order] RFP qualifies as the solicitation or particular procurement identified in 13 C.F.R. § 121.405(a) and 121.405(b) respectively." *Id.* (emphasis added).

The OHA judge stated that his conclusion was supported by other OHA decisions involving other types of multi-award contracts, including *Size Appeals of: SETA Corp. and Fed. Emergency Mgmt. Agency*, SBA No.

SIZ–4477, March 1, 2002 ("*SETA/FEMA*"). *SETA/FEMA* dealt with an RFP for a blanket purchase order ("BPA") under a federal supply schedule ("FSS") contract. *Id.* at 9. The RFP required a self-certification as a small business. *Id.* at 11. In *SETA/FEMA*, the OHA also had to determine whether the "procurement" was the "original FSS contract" or whether the "RFP [for the BPA] represents a whole new small business set-aside procurement." *Id.* at 9. The OHA held "the date to determine size ... is the date the concern submits its written self-certification of size in its response to the procuring agency's solicitation [for a BPA]." *Id.* at 11.

The OHA judge held that the RC–135 task order RFP was separate from the TSA II procurement for several reasons. The Air Force "[s]tructured an ID/IQ that anticipated further solicitations and set-asides to small businesses"; "required the offerors to re-certify their small business size status in their offers"; "[u]tilitzed different evaluation factors for award in the [task order] RFP than it used in the ID/IQ RFP"; and "[r]equired delivery orders to give the ID/IQ Contract any status or meaning." *Id.* at 16. The OHA judge further held that the Air Force's actions with respect to requiring re-certification for the RC–135 task order were consistent with the FAR. *Id.* The OHA judge stated that under 48 C.F.R. § 16.505, the FAR grants a contracting officer "maximum flexibility, within certain limits, to award delivery orders under existing ID/IQ frameworks." *Id.*

In light of the discretion given to contracting officers under ID/IQ contracts, the OHA judge stated that the Area Office's failure to uphold the re-certification requirement had the effect of "cancelling and interfering with [the] solicitation requirement." *Id.* at 18. Rather than interfering with the solicitation requirement, the OHA judge stated, "it is incumbent upon the SBA to first attempt to interpret or apply its size regulations in such

---

1.  FAR § 2.101 states that the definition of "procurement" is the same as its definition of "acquisition," which is: "the acquiring by contract with appropriate funds .... Acquisition begins at the point when agency needs are established and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract." 48 C.F.R. § 2.101(b)(2) (2005).

a way as to reconcile them with the clear discretion afforded the [contracting officer] by the FAR and by the SBA size regulations." *Id.*

Finally, the OHA judge held that re-certification is consistent with 13 C.F.R. § 121.405(a) which requires an offeror to self-certify it is small under the standard specified in the solicitation. The OHA judge stated, "It seems the Area Office did not consider 13 C.F.R. § 121.405(a)'s requirement that a concern *must* self-certify it is small under the standard specified in the *solicitation.*" *Id.* For all of these reasons, the OHA judge concluded that the Air Force's decision to require LB & B to re-certify its size for the separate RC–135 task order contract was valid and "trumped" the SBA's long-standing policy, codified in 13 C.F.R § 121.404(g), that a concern that qualifies as small at the time it receives a contract is considered small for the life of the contract.

On remand, on September 30, 2005, the Area Office determined that LB & B did not qualify as a small business under NAICS code 336413 on the date that LB & B submitted its offer in response to the RC–135 task order RFP in 2005. That same day, the Air Force awarded the task order to Sytronics. This bid protest followed.

### III. The Present Litigation

On October 6, 2005, LB & B filed a protest with this court seeking a Temporary Restraining Order ("TRO"), as well as a motion for preliminary and permanent injunctive relief. At a conference with the parties on October 7, 2005, the court combined the questions of preliminary and permanent injunction pursuant to RCFC 65(a)(2). LB & B learned during the conference that the Air Force had awarded the contract to Sytronics on September 30, 2005. LB & B seeks to reverse the August 22, 2005 decision of the OHA and have the initial Area Office's size determination reinstated.

The government and Sytronics have moved to dismiss LB & B's bid protest for lack of jurisdiction pursuant to RCFC 12(b)(1). In the alternative, the government and Sytronics have filed briefs in opposition to LB & B's

motion for preliminary and permanent injunction.

Oral argument was held on December 2, 2005.

### DISCUSSION

### I. Defendant's and Intervenor's Motions to Dismiss for Lack of Jurisdiction

### A. Standard of Review

It is the plaintiff's burden to show proper jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997). Jurisdiction in this court must be construed strictly and all conditions placed upon such grant must be satisfied before the court may assert jurisdiction. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980).

### B. Jurisdiction

#### 1. LB & B Has Exhausted Its Administrative Remedies.

■ The government and the intervenor argue that the present protest must be dismissed on the grounds that LB & B has not exhausted its administrative remedies under 13 C.F.R. § 121.1101(a) (2005). In particular, the government and intervenor argue that LB & B's claim is not ripe because the OHA has not ruled on LB & B's appeal from the Area Office's size determination following the OHA remand on September 28, 2005.

LB & B does not dispute that it was obligated to exhaust its administrative remedies, but argues that it has exhausted all remedies to make the September 28, 2005 OHA decision ripe for review by this court. First, LB & B argues that the government erroneously contends that LB & B is seeking review of the September 30, 2005 Area Office decision following the remand from the OHA. To the contrary, LB & B argues that it is challenging only the OHA decision. Second, LB & B argues that if it has not exhausted its administrative remedies, it should be excused from having to wait for a ruling by the OHA on the Area Office's decision on remand

in this case. LB & B relies on *McCarthy v. Madigan,* 503 U.S. 140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), *superseded by statute on other grounds,* 42 U.S.C. § 1997e(a) (2000), for the proposition that exhaustion is not required where: (1) requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action; (2) an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief; or (3) an administrative remedy may be inadequate because the administrative body is shown to be biased or has otherwise predetermined the issue before it. LB & B contends that the OHA has already determined that LB & B does not meet the size requirements for a small business.

The court agrees with LB & B that no further exhaustion is required in this case. First, it is clear that this court has jurisdiction over a challenge to an OHA decision. *Chapman Law Firm v. United States,* 63 Fed.Cl. 25, 32–33 (2004). The SBA regulations provide no mechanism for obtaining administrative review of an OHA decision; therefore, no further administrative remedies remain to be exhausted regarding the OHA September 28, 2005 decision.

■ Second, the court further agrees with LB & B that to the extent that review of the September 30, 2005 Area Office decision following the OHA remand is required, the requirement is excused in this case. The issue of when a size determination is to be made was already "fully and fairly litigated" before OHA in the context of the first appeal by the Air Force. In such circumstances, further exhaustion is not required. As the Third Circuit recently explained in *Popal v. Gonzales,* 416 F.3d 249, 252 (3d Cir.2005), in connection with the suggestion that a case should be dismissed for failure to appeal an immigration judge's decision following a remand from the Board of Immigration Appeals ("BIA"): "[I]t would be absurd to expect [the petitioner] to appeal the [immigration judge's] decision for a second round of BIA review." The Area Office's September 30, 2005 size determination was not a separate decision that needed to be

appealed to the OHA. It was a "mere ministerial act" implementing the OHA's decision granting the Air Force's appeal. *Id.* at 253. The court adopts the reasoning of the Third Circuit in *Popal,* and holds that where a claim has been fully and fairly litigated before the Area Office and the OHA, the exhaustion requirement has been satisfied.

**2. This Case Presents a Justiciable Controversy.**

■ Even where a court possesses jurisdiction to hear a claim, it may not do so where the claim presents a non-justiciable controversy, in other words, where the court lacks the "ability to supply relief." *Mercer v. United States,* 52 Fed.Cl. 718, 723 (2002). *See also Chapman,* 63 Fed.Cl. at 35.

■ The government and Sytronics argue that the present case is not justiciable because, under SBA regulations, the court cannot grant meaningful relief. In particular, the government and intervenor charge that under SBA regulations, once a contract is awarded, as in this case, then the OHA decision can only be applied prospectively to future procurement decisions. 13 C.F.R. § 121.1009(g)(3) (2005) ("If the formal size determination is appealed to OHA, the OHA decision on appeal will apply to the pending procurement or sale if the decision is received before award. OHA decisions received after contract award will not apply to that procurement or sale, but will have future effect, unless the contracting officer agrees to apply the OHA decision to the procurement or sale."). The government and Sytronics rely on *Chapman,* 63 Fed.Cl. at 35, for the proposition that this court lacks jurisdiction over the OHA size determination decisions once a contract has been awarded. In *Chapman,* the Area Office issued a size determination on July 23, 2004, finding that another company was a small business. *Id.* at 28. The plaintiff received the size determination on July 26, 2004, and the contract was awarded to the other company four days later. *Id.* The plaintiff filed an appeal of the Area Office's size determination to the OHA after the contract had been awarded—on August 9, 2004. *Id.* The OHA denied the plaintiff's appeal. *Id.* The plaintiff filed a bid

protest in this court, challenging the procurement on the ground of a regulatory violation. *Id.* at 29. The court held that the plaintiff's claim was not justiciable. *Id.* at 35. The court reasoned, "By failing to appeal promptly the decision of SBA Area Office, plaintiff has forfeited its opportunity to affect the current contract award under applicable regulations. Because plaintiff did not file its appeal prior to contract award and OHA did not issue a decision before HUD awarded [the other company] the contract, the award of this contract is unchallengeable on SBA size determination grounds." *Id.* (citing 48 C.F.R. § 19.302(g)(2), which provides in relevant part: "[OHA] rulings received after award shall not apply to that acquisition.")

In reply, LB & B argues that this is a justiciable controversy. LB & B argues that *Chapman* is distinguishable from the pending case. LB & B notes that in *Chapman* the plaintiffs sought to have the matter remanded to the OHA post-award for a new decision, whereas, here, LB & B seeks only to have the OHA's pre-award decision declared void so that the Area Office's determination will be reinstated. Thus, in contrast to *Chapman*, LB & B is not seeking a new post-award OHA decision.

In addition, LB & B argues that even if the award of the task order would otherwise make this dispute non-justiciable, review is appropriate because this is a dispute that is "capable of repetition yet evading review." LB & B argues that because the government can always award a contract before a protestor can file an appeal from an adverse OHA decision, the protestor will never be able to obtain review of an adverse OHA size determination.

The court agrees with LB & B and holds that this case presents a justiciable controversy. The court is capable of granting relief without remanding the case to the OHA for decision. Here, LB & B asks this court to vacate the OHA's decision so that the

Area Office's August 18, 2005 size determination can be reinstated. The provisions in 13 CFR § 121.1009(g)(3) would not bar the application of the Area Office's August 18, 2005 size determination to the task order at issue in this case. These SBA regulations address the affect of an OHA decision when it is received post-contract award, not the relief requested here, which involves a request to vacate an OHA decision, which had been issued pre-contract award. The relief requested in this case does not implicate 13 C.F.R. § 121.1009(g)(3).[2]

## II. Plaintiff's Motion for Injunctive Relief

### A. Standard of Review

This action comes under the court's bid protest jurisdiction, and the court is to review the agency's procurement related decision under the standards set forth in the Administrative Procedure Act ("APA") U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) (2000). Under the APA, the reviewing court may only overturn an agency action if the court finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). In reviewing the OHA judge's determination, special deference is given because of the SBA's "quasi-technical administrative expertise and [its] familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed.Cl. 23, 33 (2002) (citing *Baird Corp. v. United States*, 1 Cl.Ct. 662, 666 (1983)). At bottom, the court may only reverse the OHA judge's decision if the court finds that the decision is irrational or based on an erroneous application of the law. *Eagle Design and Mgmt., Inc. v. United States*, 57 Fed.Cl. 271, 273 (2002).

---

**2.** It is not necessary for the court to reach the issue of whether this case would fit within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (1995). However, the court agrees with LB & B that if it could not obtain review of the September 28,

2005 OHA decision, it would not be capable of obtaining review at any other time, because the government could always award the contract and thereby preclude review of the OHA decision, even in a case where the Area Office decision had been in the protestor's favor.

### B. OHA's Holding Was Not Legally Erroneous.

■ At issue in this case is whether the OHA judge erred in holding that the Air Force could require LB & B to re-certify its size in connection with the RFP for task order RC–135, even though LB & B qualified as a small business at the time it was selected for the underlying ID/IQ TSA II contract. LB & B argues that, under SBA's regulations and decisions, once LB & B qualified as a small business for the ID/IQ contract LB & B retains its status as a small business for the life of the ID/IQ TSA II contract. The government and the intervenor argue in response that the OHA decision is consistent with SBA's regulations and a long line of cases involving other multi-award contracts, such as multiple award schedule ("MAS") and FSS contracts. Under these cases, when issuing additional contracts under multi-award contracts, the contracting officer may require re-certifications to ensure that small business set-aside contracts are awarded to an actual small business. The government and the intervenor further argue that the OHA judge did not err in concluding that the subject task order involved a separate procurement and that the contracting officer had the discretion to require re-certification in this case.

LB & B is correct that in the ordinary contract situation a small business contractor retains that status for the life of the contract. However, the government and the intervenor are also correct that the SBA has recognized, in connection with other types of multi-award contracts, that contracting officers retain the discretion to require re-certification of small business status as of the time of the new contract. Although LB & B contends that those SBA decisions are distinguishable and that the OHA judge's decision in this case is contrary to law, the court finds for the reasons set forth below that, despite LB & B's excellent advocacy, the OHA decision must be affirmed.

As noted above, the court is bound to give great deference to SBA's interpretation of its own regulations and precedents. *Ceres Envt'l Servs.*, 52 Fed.Cl. at 33; *Eagle Design*, 57 Fed.Cl. at 273. In light of this deference, the court is not persuaded that the OHA judge erred in concluding that the present case is similar to other cases involving multi-award contracts, such as MAS and FSS contracts, where the underlying contract is simply an invitation to participate in future competitions for contracts but is not a guarantee to any specific future contract. Here it is clear that the underlying TSA II ID/IQ contract did not guarantee LB & B any specific work. Rather, it provided LB & B, along with others, the opportunity to compete for future contracts. In such circumstances, the OHA judge's decision that the TSA II contract provided only a "framework" for future contracting was not irrational. Nor was his conclusion that the present RFP represented a new procurement that could involve a new certification.

Indeed, the SBA has historically recognized that contracting officers retain discretion in multi-award contract situations to require small businesses to re-certify where the new contract involves a small business set-aside. *See Size Appeal of the MIL Corp.*, SBA No. SIZ–4641, June 21, 2004; *Size Appeal of Advanced Mgmt. Tech., Inc.*, SBA No. SIZ–4638, June 1, 2004; *Size Appeal of Vistronix, Inc.*, SBA No. SIZ–4550, April 17, 2003; *SETA/FEMA*, SBA No. SIZ–4477. The SBA regulations state that a concern must self-certify that it is small under the size standard specified in the solicitation. 13 C.F.R. § 121.405(a). It is not disputed that the contracting officer specifically requested re-certification in the solicitation in this case.

In addition, LB & B contends that if the subject task order were to be deemed a new procurement, the Air Force would have violated the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253 (2000).[3] However, this concern is undermined by the fact that the FAR provides tremendous discretion

---

3. In particular, LB & B argues that the procurement would violate CICA in that 41 U.S.C. § 253(b)(2) does not permit a contracting agency to restrict competition under a "procurement" to certain small businesses, as the Air Force did in restricting competition for the subject task order to those businesses who had received awards under the TSA II contract as small businesses. Pl.'s Reply 18.

to contracting officers in administering ID/IQ contracts under 48 C.F.R. § 16.505(b)(ii), which provides in relevant part: "The contracting officer may exercise broad discretion in developing appropriate order placement procedures." In other words, it is not at all clear that the contracting officer violated CICA by requiring small businesses to re-certify in order to qualify for a new procurement arising from the TSA II contract.

In sum, given the discretion provided to contracting officers in administering ID/IQ contracts and to the SBA in deciding when a size determination decision is appropriate, the court cannot say that the OHA decision affirming the contracting officer's request for re-certification under the subject RFP was irrational or illegal. The subject OHA decision is largely consistent with other OHA decisions concerned with the timing of size determinations in the context of multi-award contracts and the balance it reaches among the various SBA regulations governing size determinations is not irrational. In addition, LB & B's argument that the subject task order RFP would be illegal if the OHA decision were affirmed is not ultimately persuasive. The OHA is charged with deciding when size determinations should be made under its own regulations. Here, taking all of the relevant facts and regulations into account, the OHA judge determined that re-certification was appropriate in this case. The court agrees. Indeed, the OHA decision gives meaning to the SBA's policy goal of ensuring that small business set aside contracts are in fact awarded to small businesses where, as here, a previous guarantee for work has not been granted.[4]

## CONCLUSION

For the foregoing reasons, the court holds that it has jurisdiction. Thus, the government's and Sytronics' motions to dismiss for lack of jurisdiction are **DENIED**. Based on the merits, the court holds that the OHA decision was not legally erroneous. Thus, LB & B's request for injunctive relief is **DENIED**. Judgment is entered for the de-fendant and the defendant-intervenor. Each party shall bear its own costs.

---

4. Having concluded that LB & B has not prevailed on the merits of its claim, it is not necessary for the court to reach its request for injunctive relief.