Gerald A. LECHLITER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–1729C.

United States Court of Federal Claims.

April 25, 2006.

---

Gerald A. Lechliter, Lewes, DE, pro se plaintiff.

Thomas D. Dinackus, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant. Major Rebecca Ausprung, U.S. Army Litigation Division, Arlington, VA, of counsel.

## OPINION

FIRESTONE, Judge.

Currently pending before the court is the United States' ("government's") July 5, 2005 Motion to Dismiss, in part, for Lack of Subject Matter Jurisdiction; to Dismiss, in part, for Failure to State a Claim Upon Which Relief Can Be Granted; and for Judgment Upon the Administrative Record with Regard to the Remainder of the Complaint. This action was filed by *pro se* plaintiff Gerald A. Lechliter ("plaintiff" or "Mr. Lechliter"). Mr. Lechliter, who retired based on longevity from the United States Army ("Army") on June 1, 1999, challenges the Army's determination that he was fit for duty and argues that he should have been given a disability retirement. Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the government argues that this court lacks jurisdiction over Mr. Lechliter's claim based on the Due Process Clause of the Fifth Amendment because that clause is not a money-mandating provision. Pursuant to RCFC 12(b)(6), the government argues that Mr. Lechliter's requests for declaratory relief and his complaint that the Army does not have objective standards for determining fitness-for-duty fail to state claims upon which this court can grant relief. Finally, in its motion for judgment on the administrative record pursuant to RCFC 56.1, the government argues that the decisions of the Army Board for the Correction of Military Records ("ABCMR") denying Mr. Lechliter's application for disability retirement are supported by substantial evidence and were not arbitrary, capricious, or contrary to law.

For the reasons that follow, the court **DENIES** the government's motion to dismiss, in

part, for lack of subject matter jurisdiction; the court **GRANTS** the government's motion to dismiss, in part, for failure to state a claim upon which relief can be granted; the court **GRANTS** the government's motion for judgment upon the administrative record; the court **DENIES** the plaintiff's cross-motion for judgment upon the administrative record; and the court **DENIES** the plaintiff's motion for discovery, supplementation of the administrative record, and a hearing.

## STATEMENT OF FACTS

The facts are set forth in great detail in both of the ABCMR decisions, dated September 20, 2001, A.R. vol. I, 161–171, and August 20, 2003, A.R. vol. I, 1–39. The court does not repeat them here, but rather summarizes the following facts, as set forth in the administrative record and the parties' statements and counter-statements of facts,[1] that are relevant to the administrative procedure by which Mr. Lechliter was deemed to be "fit for duty" prior to his retirement from the Army.

Mr. Lechliter retired from active duty with the Army with more than 26 years of honorable service. He is receiving a longevity retirement. In the last assignment he held prior to his retirement, Mr. Lechliter served as chief of Defense Liaison Detachment 4, a Defense Intelligence Agency unit in Bonn, Germany. Mr. Lechliter's operational chain of command was located in the Washington, D.C. area.

### A. Proceedings Before the Medical Evaluation Board and Physical Evaluation Board

In 1998, Mr. Lechliter, then 55 years old, sought treatment at Landstuhl Regional Medical Center in Landstuhl, Germany, for numerous ailments. The examining doctors assigned Mr. Lechliter certain profiles that restricted his physical activities. As a result of those profiles, Mr. Lechliter was referred to a Military Occupational Specialty/Medical Retention Board ("MMRB"). A.R. vol. I, 199. The MMRB then referred Mr. Lechliter to a Medical Evaluation Board ("MEB") for a disability evaluation. A.R. vol. I, 201–202. In November 1998, the MEB concluded that Mr. Lechliter did not meet the Army's retention standards. A.R. vol. I, 227. In accordance with Army Reg. 635–40, the MEB referred Mr. Lechliter's record to a Physical Evaluation Board ("PEB") for an evaluation of his fitness for duty.[2] A.R. vol. I, 209–210, 244. The form documenting the MEB proceedings indicated that Mr. Lechliter did not "desire to continue on active duty." A.R. vol. I, 210. Mr. Lechliter concurred with the MEB's findings and recommendation. A.R. vol. I, 210.

Despite the MEB's conclusions, the PEB found that Mr. Lechliter was "fit for duty" on Department of the Army ("DA") Form 199 dated December 3, 1998. A.R. vol. I, 222. In particular, the PEB determined that Mr. Lechliter's medical conditions "did not prevent satisfactory performance of duty." A.R. vol. I, 222. On December 11, Mr. Lechliter indicated his non-concurrence with the PEB's decision on the DA Form 199 by marking the "I do not concur" line and by noting, "I will submit an appeal after I receive my medical records ..." A.R. vol. I, 223. Mr. Lechliter did not mark the "I do not concur and demand a formal hearing" line on the form. Mr. Lechliter prepared a written appeal of the PEB's decision. His appeal was dated December 21, 1998. A.R. vol. I, 224–226.

---

1. The court **GRANTS** the government's Motion to Strike Plaintiff's Declaration and its Motion to Strike Plaintiff's Counter Statement to Defendant's Counter–Statement of Facts; the court **DENIES** Mr. Lechliter's motions to supplement the record with his declaration and counter statement. Review of ABCMR decisions is limited to review of the administrative record before the ABCMR. *Rebosky v. United States*, 60 Fed.Cl. 305, 310–11 (2004), citing *Dodson v. United States*, 988 F.2d 1199, 1204–05 (Fed.Cir.1993) and *Pence v. United States*, 52 Fed.Cl. 643, 645 (2002). It is clear, however, from the court's review of the additional materials Mr. Lechliter

has presented, that all of the points raised in the additional materials were presented to the ABCMR in one form or another. Therefore, all of the facts and documents referenced in Mr. Lechliter's extra-record materials are before the court in other portions of the administrative record and the court has considered these documents.

2. According to Army Reg. 635–40 ¶ 4–13(a) (1990), the MEB refers to the PEB those soldiers "who do not meet medical retention standards."

The appeal letter stated: "I appeal the PEB's decision based primarily on my multiple orthopedic and neurological impairments.... The following explanation of the impairments is provided to help the PEB put my present physical condition and ability to perform duties commensurate with my rank and specialities in the future ... As my supervisor stated, I am performing my present duties satisfactorily, but the billet I am in is unique." A.R. vol. I, 224. In his appeal, he concluded, "If needed, I request to appear before a Formal Board hearing to argue my case." A.R. vol. I, 226.

Portions of Mr. Lechliter's appeal records, including Mr. Lechliter's rebuttal argument, were not received by the PEB until January 19, 1999, after the PEB had already affirmed the fitness-for-duty finding. A.R. vol. I, 244. The PEB had received the medical records and certain other papers before it made its decision, which the PEB concluded constituted Mr. Lechliter's appeal. A.R. vol. I, 182. By letter dated December 29, 1998, the PEB denied this "appeal" and affirmed the decision of the informal PEB. A.R. vol. I, 242. The United States Army Physical Disability Agency ("USAPDA") approved the PEB's fit-for-duty finding on January 5, 1999. A.R. vol. I, 275. In a letter dated February 8, 1999, to the Commander of the 2nd General Hospital of the Landstuhl Regional Medical Center, the president of the PEB, Colonel Ronald Grubb, stated that Mr. Lechliter's case was closed as of January 11, 1999. A.R. vol. I, 244. Colonel Grubb noted that in a letter appeal from Mr. Lechliter dated December 21, 1998, there was "an undated change to the MEB narrative summary and a color photograph. This change to the original MEB added a diagnosis of valvular heart disease.... Since this diagnosis was not included on the earlier MEB and therefore not evaluated by the PEB, you may wish to consider whether it would be appropriate to conduct a new MEB. As the case closed it cannot be readjudicated without a new MEB...." A.R. vol. I, 244.

## B. Mr. Lechliter's Retirement From the Army

By memorandum dated December 11, 1998, Mr. Lechliter requested a voluntary retirement. A.R. vol. I, 227–229. In the memorandum he noted that he had recently gone through "the MEB/PEB process." A.R. vol. I, 227. He then requested an eleven month time-in-grade waiver to retire as a colonel, rather than a lieutenant colonel. A.R. vol. I, 227. Mr. Lechliter's request stated, "If the time-in-grade waiver is not granted, this retirement request is withdrawn." A.R. vol. I, 227. The government granted his request on January 25, 1999. A.R. vol. II, 418.

In February 1999, Mr. Lechliter asked for a final Officer Evaluation Report. He stated: "I've been missing quite a bit of work and have had some blood pressure problems. My ailments have definitely hindered my effectiveness. Since you've not visited the unit and have no direct observation of my performance, you'll have to take my word that my ailments are hindering my performance." A.R. vol. III, 499. The Army did not grant Mr. Lechliter's request. A.R. vol. I, 125.

On March 10, 1999, Mr. Lechliter was given a retirement physical. The Army determined that he was "qualified for retirement." A.R. vol. II, 92–93. Mr. Lechliter returned to the United States from Germany in mid-April 1999 to begin out-processing from the Army, pursuant to his retirement. Mr. Lechliter's last day on active duty, prior to his retirement, was May 31, 1999. A.R. vol. I, 40.

## C. Mr. Lechliter's Inspector General Complaint

In a letter dated March 8, 1999, Mr. Lechliter submitted an action request to the Inspector General ("IG") at Landstuhl Regional Medical Center. Mr. Lechliter requested a new MEB, to be conducted either in Germany or at the Walter Reed Medical Center in Washington, D.C. A.R. vol. I, 245–248. Mr. Lechliter argued that the MEB was "negligent in fulfilling its responsibility to ensure my case file presented an accurate description of my impairments." A.R. vol. I, 248. Mr. Lechliter argued that the MEB's failures led to an erroneous PEB determination. Mr. Lechliter asked that a "new thorough MEB that conforms to regulatory re-

quirements be conducted immediately." A.R. I, 248. In his request, Mr. Lechliter noted that he was scheduled to undergo a retirement physical that same week.

The IG's response, dated August 23, 1999, after Mr. Lechliter had retired, stated that the "Medical Center Commander, after careful review, acknowledged inconsistencies between certain of the clinical findings and the narrative summaries. He concluded, however, that these were not of such a nature as to establish an unfitting medical condition or to significantly affect the board's overall findings." A.R. vol. I, 249. The IG response also stated that because Mr. Lechliter was retired, he had two options: to appeal to the ABCMR or to seek evaluation through the Department of Veterans Affairs ("DVA"). A.R. vol. I, 250.

### D. Disability Awards from the Department of Veterans Affairs and the Social Security Administration

Mr. Lechliter had his initial DVA examination on June 1, 1999, the first day of his retirement. A.R. vol. II, 37–39. Based on this initial examination, the DVA awarded Mr. Lechliter a 50% combined disability rating on October 25, 1999, with an effective date of June 1, 1999. A.R. vol. II, 118–119. Following subsequent examinations and appeals by Mr. Lechliter, the combined disability rating was eventually increased to 100%, as follows: On January 1, 2000, the DVA increased the combined disability rating from 50% to 70%, effective June 1, 1999. A.R. vol. II, 119. On April 21, 2000, the DVA increased the combined disability rating to 80%, effective June 1, 1999. A.R. vol. II, 118–119. Mr. Lechliter was examined by a DVA psychiatrist in July 2001, A.R. vol. II, 322–324, and subsequently received a disability rating for his nervous condition, effective May 1, 2001. As a result, on September 25, 2002, the VA increased the combined disability rating to 100%, effective May 1, 2001, of which 80% remained effective as of June 1, 1999. A.R. vol. II, 332–334.

Mr. Lechliter filed for Social Security Administration ("SSA") benefits on April 19, 2001. A.R. vol. II, 121. Based on examinations conducted in September 2001, A.R. vol. II, 106–111, 191–194, the SSA awarded Mr. Lechliter disability payments in a letter dated October 13, 2001. The SSA letter stated that Mr. Lechliter became disabled on June 1, 1999. The letter stated that under the disability rules, to qualify for the disability award, Mr. Lechliter's health problems must keep him "from doing any kind of substantial work." A.R. vol. II, 121–122.

### E. Proceedings Before the Army Board for the Correction of Military Records

On October 24, 2000, Mr. Lechliter applied to the ABCMR seeking to convert his longevity retirement to a disability retirement. A.R. vol. I, 172–189. In the processing of Mr. Lechliter's case by the ABCMR, the Office of the Medical Advisor of the Army Review Boards Agency ("medical advisor") provided an advisory opinion, dated March 13, 2001. A.R. vol. I, 166, 260–261. The medical advisor noted that Mr. Lechliter's underlying military medical records were not available during his review, but that the MEB narrative summary was available. A.R. vol. I, 260. The medical advisor concluded: "There is no medical reason to make a change in the discharge at this time." A.R. vol. I, 261. In reaching this conclusion, the medical advisor stated that none of the diagnoses listed in the MEB narrative summary were "specifically unfitting." A.R. vol. I, 260. The medical advisor stated that "a medical impairment does not automatically equate to a medical disability." A.R. vol. I, 260. The medical advisor stated that, whereas "the military disability evaluation system compensates only those disabilities that terminate a military career," "[t]he Department of Veteran's Affairs (DVA) will compensate all service-connected impairments meeting the rating schedule." A.R. vol. I, 260. Mr. Lechliter provided a rebuttal to the medical advisor's opinion in which he stated that the advisory opinion had failed, among other things, to consider the evidence in his request and addendum. A.R. vol. I, 262–266.

In addition to the medical advisor's opinion, the ABCMR also received an opinion from a legal advisor of the Army Review Boards Agency, dated September 17, 2001. A.R. vol. I, 269–270. This opinion stated

that the fact that Mr. Lechliter had received an 80% rating from the DVA did not indicate that "the MEB or PEB was flawed to the prejudice of the applicant." A.R. vol. I, 269. The legal advisor's opinion stated: "The essential fact is that the applicant's injuries did not render him unable to perform his duties." A.R. vol. I, 269.

In its September 20, 2001 decision the ABCMR denied Mr. Lechliter's request for disability retirement. A.R. vol. I, 161–171. The ABCMR referred to the medical advisor's opinion, A.R. vol. I, 166, as well as to Mr. Lechliter's rebuttal, A.R. vol. I, 167. The ABCMR stated that, despite the "presence of various medical conditions, there is no evidence of record that the applicant suffered from any illness or injury at the time of his voluntary retirement that was of such severity that he was rendered unable to reasonably perform the duties of his office, grade, rank, or rating within the limits of his physical profile." A.R. vol. I, 169. The ABCMR noted that Mr. Lechliter's military service had not been interrupted by a physical disability and that his "continued performance of duty raised a presumption of fitness, which has not been overcome ..." A.R. vol. I, 169. In stating that the evidence supported the PEB findings that Mr. Lechliter was "more than capable of performing his duties," the ABCMR relied on his positive Officer Evaluation Report, dated September 30, 1998, and pointed out that none of the three physical profiles issued between April and June 1998 required a change in military occupational specialty or duty assignment.[3] A.R. vol. I, 169.

The ABCMR also distinguished the military disability system from DVA awards. It stated: "The military disability system only compensates for those disabilities that terminate a military career while the system provided by the DVA compensates for all service-connected impairments meeting the disability rating schedule." A.R. vol. I, 166. The ABCMR stated that the DVA award did not in itself "establish physical unfitness

for Department of the Army purposes." A.R. vol. I, 169.

On September 27, 2002, Mr. Lechliter submitted a second request to correct his military records to the ABCMR. A.R. vol. I, 40–90. The second request consisted of a 48–page narrative and numerous attachments, including a 2001 report by Reed S. Oxman, a medical doctor with whom Mr. Lechliter had consulted; a 2002 report and a handwritten addendum by Paul Viola, a DVA psychiatrist; and medical documentation related to his DVA and SSA awards. A.R. vol. I, 4. Dr. Oxman's report identified a number of deficiencies in the Army's medical examinations of Mr. Lechliter. A.R. vol. II, 3–10. In his report, Dr. Oxman also reviewed Mr. Lechliter's other medical records. Dr. Oxman stated: "Colonel Lechliter's ability to perform his duties in a highly stressful environment, within a reasonable degree of medical certainty, was impaired and ... such an environment could have led to a further deterioration in his health." A.R. vol. II, 10. Dr. Viola's addendum stated, "Based upon my review of you on 7/11/02 for psychiatric Compensation and Pension exam, I do agree completely with Dr. Oxman's statement and I agree that it is quite clear that you were suffering from depression while on active duty. In other terms, in my opinion it is 'just as likely as not' that you *did* suffer from depression while on active duty and that you were not properly referred for treatment." A.R. vol. I, 101. Neither Dr. Oxman nor Dr. Viola stated that Mr. Lechliter had not been able to perform the duties he had been assigned prior to his retirement.

Mr. Lechliter also submitted letters from individuals who had worked with Mr. Lechliter in Germany—Russell Johnson and Thomas Gemma. Mr. Johnson stated that Mr. Lechliter's position was "important ... but should have been relatively stress free." Mr. Johnson also referred to the "turmoil that resulted from the lack of evenhanded involvement" by Mr. Lechliter's superiors during a "significant military disciplinary issue." A.R. vol. III, 494–495. Mr. Gemma also referred

---

**3.** In its 2003 decision, the ABCMR corrected this statement to reflect the fact that for the profile stating that Mr. Lechliter could not shave his facial hair, the commanding officer indicated

that Mr. Lechliter required a change in his duty assignment because of his beard. A.R. vol. I, 35; vol. IV, 7.

to the "turmoil in the unit" generated by the disciplinary matter. A.R. vol. III, 496.

By a decision dated August 20, 2003, the ABCMR granted partial relief, in correcting certain "material errors" in its earlier decision, but denied Mr. Lechliter's request to convert his longevity retirement into a disability retirement. A.R. vol. I, 1–39. The ABCMR noted that the September 2001 decision had material errors, such as listing the number of ailments rated by the DVA as eight instead of ten; stating that Mr. Lechliter's high cholesterol was controlled by medication; and stating that the USAPDA reviewed Mr. Lechliter's case during the period of January 4–6, 1999, instead of the period of January 4–5, 1999. A.R. vol. I, 35–36. The ABCMR concluded, however: "Neither the material errors noted, nor their corrections, had any material effect on the manner of the applicant's retirement, or on the decision made by the 20 September 2001 Board." A.R. vol. I, 37. The ABCMR also acknowledged that "in some instances regulatory procedures might not have been followed in their entirety in the applicant's disability processing." A.R. vol. I, 37. However, the ABCMR stated that the mistakes "did not effect his medical condition, and did not make him unfit." A.R. vol. I, 37. The ABCMR concluded: "The applicant was determined to be physically fit by a PEB in December 1998 and physically fit for retirement as noted in his March 1999 report of physical examination. Despite his numerous contentions and the documentation that he has provided, the Board is not convinced otherwise." A.R. vol. I, 38.

### F. Litigation History

Mr. Lechliter filed a complaint in this court on December 2, 2004. In his complaint, Mr. Lechliter alleges that he was deprived of a military disability retirement without due process in violation of the Fifth Amendment and that the Army's decision was arbitrary, capricious, and contrary to regulations and law and unsupported by substantial evidence. Mr. Lechliter requests that he be given a disability retirement with a 75% disability rating, effective June 1, 1999; that he be paid the difference between the disability retire-ment pay he believes he was entitled to and the retirement paid he received from June 1, 1999, until present, and that such payment be tax-free; that the court issue a declaratory judgment that the Army violated his due process rights; and an award of costs.

On July 5, 2005, the government filed a Motion To Dismiss, In Part, For Lack of Subject Matter Jurisdiction; To Dismiss, In Part, for Failure to State a Claim Upon Which Relief Can Be Granted; and For Judgment Upon the Administrative Record with Regard to the Remainder of the Complaint.

On September 12, 2005, Mr. Lechliter filed a "Declaration." The government moved to strike Mr. Lechliter's declaration on December 1, 2005. Mr. Lechliter moved to supplement the administrative record with his declaration on February 21, 2006.

On January 25, 2006, Mr. Lechliter filed "Plaintiff's Proposed Counter–Statement to Defendant's Counter–Statement of Facts." The government moved to strike this submission on February 6, 2006. Mr. Lechliter moved to enter his proposed counter-statement in the record on February 14, 2006.

### DISCUSSION

### A. Jurisdiction and Standard of Review

This court has Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1) (2000), in conjunction with 10 U.S.C. §§ 1201–1221 (2000), over military disability pay claims. See *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir. 1991). The court may order correction of military records, if the order is "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2).

This court must determine at the outset whether it has jurisdiction over the plaintiff's specific claims, and if jurisdiction is lacking, the court must dismiss the claims under RCFC 12(b)(1). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the

Tucker Act." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005).

Where the government has raised the issue of jurisdiction in a dispositive motion, the plaintiff bears the burden of establishing jurisdiction. *Myers v. United States,* 50 Fed. Cl. 674, 680 (2001); *see Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). The court construes allegations in the complaint most favorably to the plaintiff, resolving ambiguities in its favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the court may look beyond the pleadings and "inquire into jurisdictional facts" in order to determine whether jurisdiction exists. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). In the present case, the court has been presented with matters outside the pleadings, namely documents offered by the plaintiff and the government in the appendices to their respective filings. The court will rely on these matters to the extent that they allow the court to determine whether it has jurisdiction over this case.

RCFC 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. This court will dismiss a complaint for failure to state a claim upon which relief can be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him relief. *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. 1683 ("[I]n passing on a motion to dismiss ... for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."). In addition, the court must presume that the undisputed factual allegations included in the complaint are true. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Finally, where, as here, the plaintiff in the case is proceeding *pro se,* the pleadings will be held to a "less stringent standard[ ] than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotations omitted).

The standards to be applied under RCFC 56.1 are equally well-settled. As a general rule in the military disability area, the court is bound by the correction board decision unless the plaintiff establishes "by cogent and clearly convincing evidence that the [military's] decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes or regulations." *Kirwin v. United States,* 23 Cl.Ct. 497, 502 (1991) (citing *de Cicco v. United States,* 230 Ct.Cl. 224, 677 F.2d 66, 70 (1982)). *See also Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.1986); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province."). In *Heisig,* the Federal Circuit explained that this standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Id.* at 1157.

Importantly, the court does not sit as a "super correction board." *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). The court will not "substitute its judgment for that of the correction board." *Harris v. United States,* 14 Cl.Ct. 84, 89 (1987). Where the court finds that "reasonable minds might reach differing conclusions, the fact that this court would have reached a different conclusion than the one the agency reached is not sufficient for this court to overturn the administrative action." *Id.* at 90.

**B. Motion to Dismiss, In Part, For Lack of Subject Matter Jurisdiction**

■ The government contends that this court lacks subject matter jurisdiction to entertain Mr. Lechliter's allegations that are premised upon the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and that this court should dismiss these claims under RCFC 12(b)(1). Mr. Lechliter claims that he was deprived of a disability retirement in violation of the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 9, 170, 171. According to Mr. Lechliter's complaint, the government violated his due process rights by failing to provide him with a formal PEB hearing and by considering only portions of the record. He also argues that 10 U.S.C. § 1214 (2000), which provides for a hearing, if requested, for service mem-

bers who are found unfit for duty but does not provide for a hearing if a service member is found fit for duty, is unconstitutional on due process and equal protection grounds. The government argues that these claims should be dismissed because the Due Process Clause of the Fifth Amendment is not a money-mandating provision. For this proposition, the government relies on *James v. Caldera*, 159 F.3d 573, 581 (Fed.Cir.1998) ("[I]t is well-established that the Court of Federal Claims lacks jurisdiction of such claims because neither [the due process clause or the double jeopardy clause of the Fifth Amendment] is a money-mandating provision.").

In response, Mr. Lechliter relies on *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir.1997) for the proposition that this court has jurisdiction over a constitutional claim when it is part of his money-mandating claim. In *Holley* the Federal Circuit held: "The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, *or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful.*" *Id.* (emphasis added). The Federal Circuit proceeded to conclude that this court may consider constitutional claims that are relevant to claims for monetary relief. *Id.* ("Claimants in the Court of Federal Claims have the right to raise issues based on asserted procedural violations, whether violative of the Constitution or of statute or regulation, to support their claims for monetary relief."). The Federal Circuit determined that the plaintiff in *Holley* had pled a monetary claim that satisfied the jurisdictional requirements of the Tucker Act, and proceeded to consider the alleged constitutional violations. *Id.*

The court denies the government's motion to dismiss, in part, for lack of subject matter

jurisdiction to the extent Mr. Lechliter asserts procedural due process claims regarding a right to a hearing. In the present case, Mr. Lechliter has pled that the Army deprived him of a military disability retirement without procedural due process in violation of the Fifth Amendment. Mr. Lechliter has also claimed that he was entitled to a disability retirement from the government, which establishes jurisdiction under the Tucker Act in this court. Under the reasoning of *Holley*,[4] the court may consider Mr. Lechliter's claim that the denial of a disability retirement without a hearing violated due process.

### C. Motion to Dismiss, In Part, For Failure to State a Claim

The government also contends that Mr. Lechliter's requests for declaratory relief and complaint that the Army does not have objective standards for determining fitness-for-duty fail to state a claim upon which this court can grant relief, and that the court should dismiss these claims under RCFC 12(b)(6).

First, Mr. Lechliter has requested the following declaratory relief: that the court issue a declaratory judgment that the Army violated his procedural and substantive due process rights by violating its own regulations, and that the court declare that the money judgment he seeks be tax free and include any adjustment to federal and state taxes withheld and paid prior to the judgment. Compl. 39. The government argues that these requests fail to state claims upon which the court can grant relief because the declaratory relief requested by Mr. Lechliter exceeds the scope of the court's equitable powers. In particular, the government argues that the court's equitable powers in a military pay case are limited to "issu[ing] orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable rec-

---

4. *See also Berkley v. United States*, 287 F.3d 1076, 1091 (Fed.Cir.2002) (citing *Holley* for the proposition that the court had jurisdiction to review an instruction given to an Air Force reduction-in-force board where a constitutional equal protection claim had been raised); *Golding v. United States*, 48 Fed.Cl. 697, 724 (2001) (holding that the court had jurisdiction to consider a claim

that a plaintiff's discharge lacked due process where the plaintiff had pled that he was entitled to pay and allowances); *Milas v. United States*, 42 Fed.Cl. 704, 710 (1999) (holding that the court had jurisdiction where the plaintiff's claims were not based solely upon the violations of the constitution).

ords," and that the court can grant such relief only when it is collateral to a money judgment. 28 U.S.C. § 1491(a)(2). Mr. Lechliter did not respond to the government's arguments on this issue.

The court agrees with the government that Mr. Lechliter's requests for declaratory relief exceed the scope of the court's equitable powers. Thus, the court lacks the power to grant the requested relief.

■ Second, Mr. Lechliter complains that the Army does not have objective performance standards that could be used to measure his fitness for duty, taking into account his rank and branch of service. Mr. Lechliter complains that the fitness for duty standard is too subjective. The government argues that this argument fails to state a claim upon which relief can be granted because there is no statutory or regulatory requirement that the Army adopt such standards. In response, Mr. Lechliter argues that the Army should have such standards for officers, arguing that the Army has such standards for enlisted soldiers and the SSA has such standards for its disability evaluation process. Mr. Lechliter also appears to rely on Army Reg. 600–60 for the proposition that the Secretary of the Army has ordered PEB members to use job requirements to determine fitness and that the Army cannot now claim it does not have to look to general job requirements. In its reply, the government asserts that Army Reg. 600–60 deals with MMRB procedures and does not apply to the PEB, which is governed by Army Reg. 635–40. Def.'s Reply 7.

The court agrees with the government that this issue is not justiciable. Mr. Lechliter has not demonstrated that either Congress or the Army has required the Army to have objective performance standards for officers. In the absence of such a regulation or statute, this issue is not justiciable. *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.

1993) ("[J]udicial review is only appropriate where the Secretary's discretion is limited. . . . The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard."). Indeed, as the Federal Circuit has repeatedly cautioned, "judges are not given the task of running the Army." *Fisher,* 402 F.3d at 1182 (quoting *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953)).

Therefore, the court grants the government's motion to dismiss Mr. Lechliter's requests for declaratory judgment and his complaint that the Army does not have objective performance standards for officers, pursuant to RCFC 12(b)(6).

## D. Review on the Administrative Record

In its request for judgment on the administrative record, the government argues that the ABCMR's decisions not to grant Mr. Lechliter a disability retirement are supported by substantial evidence in the record and are not arbitrary and capricious.[5]

Mr. Lechliter, in response, claims that the ABCMR's decisions denying him a disability retirement are not supported by the record and are arbitrary and capricious. Specifically, Mr. Lechliter argues that the ABCMR failed to analyze the evidence that Mr. Lechliter had presented which conflicted with the determination that he was fit for duty. His contentions regarding the ABCMR's failure to analyze this evidence generally fall under three categories: (1) the failure to give proper weight to his DVA and SSA disability awards and the medical records that supported these awards; (2) the failure to properly evaluate Mr. Lechliter's fitness for future duty; and (3) the failure to address the numerous errors that allegedly occurred throughout the administrative process, in-

---

5. The court's review on the administrative record is limited to the ABCMR's 2001 and 2003 decisions. This includes any issues that Mr. Lechliter raised concerning the remainder of the administrative process, such as the MEB and PEB, in his applications to the ABCMR. *See Dodson,* 988 F.2d at 1204 ("[C]ivilian correction boards have a duty to determine whether there has been

error or injustice, and if there has been, to grant thorough and fitting relief. . . . [A] soldier who has sought relief from a correction board is bound by its decision unless he can demonstrate . . . that the board acted arbitrarily, contrary to law, or that its determination was unsupported by substantial evidence.")

cluding the government's failure to provide a hearing and properly evaluate conflicting data. The court will examine each of Mr. Lechliter's contentions in turn.[6]

### 1. The DVA and SSA Awards and Related Medical Records

■ Mr. Lechliter argues that the ABCMR failed to give proper weight to his DVA and SSA disability awards[7] or to the medical records in support of those determinations. While Mr. Lechliter acknowledges that the ABCMR is not obligated to defer to DVA or SSA disability determinations, he argues that where such awards follow shortly after separation and where the awards are based on the same ailments that the Army evaluated, the ABCMR must explain why it chooses not to defer to those determinations or to the medical records in support of those awards which Mr. Lechliter had also provided to the ABCMR. Mr. Lechliter relies on *Hutter v. United States,* 170 Ct.Cl. 517, 345 F.2d 828, 831 (1965) for the proposition that a DVA determination is to be given "considerable weight" by a corrections board. Mr. Lechliter contends that the ABCMR dismissed the DVA findings without discussing the medical information that allegedly detracted from the PEB's finding that he was fit for duty.

Mr. Lechliter contends that the DVA and SSA awards are especially relevant here because the awards followed shortly after his retirement. He points out that his initial DVA physical examination took place on the first day of his retirement, June 1, 1999, and that—with the exception of his DVA disability award for his nervous condition—his disability awards are effective from the first day of his retirement.

The government argues that the fact that the DVA and SSA concluded, after he had

retired, that Mr. Lechliter was disabled does not establish that he was unfit for duty on the day he retired. The government argues that it is well-established that the DVA's disability determinations are not "binding upon the court nor conclusive on the issue of disability retirement." *Finn v. United States,* 212 Ct.Cl. 353, 548 F.2d 340, 342 (1977). The government argues that the military disability system evaluates fitness-for-duty, while the DVA and SSA address the impairment of civilian earning capacity resulting from a disability. The government also relies on *Hix v. Gober,* 225 F.3d 1377, 1380 (Fed.Cir.2000) ("[V]eterans benefit statutes are construed liberally in favor of the veteran.") for the proposition that veterans benefits are administered in accordance with a regulatory scheme and philosophy that are particularly favorable toward granting claims.

In terms of the timing of the DVA and SSA evaluations, the government argues that—with the exception of Mr. Lechliter's first evaluation by the DVA on June 1, 1999, the first day of his retirement—the evaluations that led to Mr. Lechliter's disability awards were done well after he had retired. For example, the government points out that the disability award from the SSA was based on examinations conducted in September 2001 and that the increase in the DVA's award to 100% was based on an examination done by a DVA psychiatrist in July 2002.[8]

The court finds that the ABCMR gave adequate weight to Mr. Lechliter's DVA and SSA disability awards and to the medical records in support of those awards. As stated above, as part of the processing of his case, both medical and legal advisors considered the DVA disability rating—then a rating of 80%. The medical and legal advisory opinions stated that the DVA rating did not

---

**6.** Mr. Lechliter has listed numerous specific objections in his pleadings before this court. In general, Mr. Lechliter's arguments fall within these categories. To the extent objections are not specifically identified by the court, the same conclusions that apply to the discussed categories apply to those issues as well.

**7.** The SSA awarded Mr. Lechliter a disability award in September 2001, which was subsequent

to the 2001 ABCMR decision and prior to the 2003 ABCMR decision.

**8.** The government also points to a DVA cardiology board that was conducted in June 2001. However, Mr. Lechliter's DVA disability rating had already been increased to 80% by that time, and the subsequent increase in his disability rating was unrelated to his cardiovascular condition.

indicate error in the Army's disability evaluation because of the difference in the purposes of the military disability system and the DVA evaluation system. Significantly, the medical advisor concluded that, based on the medical facts evident in his review, the PEB had properly adjudicated Mr. Lechliter's case. In addition, the legal opinion also stated that Mr. Lechliter's "injuries did not render him unable to perform his duties" and pointed to Mr. Lechliter's "sterling" Officer Evaluation Reports. A.R. vol. I, 269. In its 2001 decision, the ABCMR also distinguished the regulatory purposes of the DVA and Army disability evaluation systems, and stated that the DVA rating in itself did not "establish physical unfitness for Department of the Army purposes." A.R. vol. I, 169.

In its 2003 decision, the ABCMR noted Mr. Lechliter's arguments that the DVA and SSA disability awards should have probative value in the ABCMR's reconsideration of his request. A.R. vol. I, 6, 13. The ABCMR did not further address these disability awards in its 2003 decision.

Given the fact that a medical advisor, a legal advisor, and the ABCMR in its 2001 decision addressed the DVA rating, explained the differences between the two disability evaluation systems, and concluded that the PEB had not erred, the court finds that the DVA rating was adequately considered. The fact that the ABCMR did not again address the DVA rating or the SSA award in its 2003 decision does not necessarily mean that the ABCMR failed to consider the disability awards. See *Rebosky*, 60 Fed. Cl. at 312 (quoting *Lorion v. U.S. Nuclear Regulatory Comm'n*, 785 F.2d 1038, 1042 (D.C.Cir.1986)) ("While an agency has a duty to consider all evidence, '[i]t does not necessarily follow ... that the failure to mention certain evidence means that it was not considered.' "). Therefore, the court rejects Mr. Lechliter's argument that the ABCMR's decisions are arbitrary and capricious on the grounds that the ABCMR failed to give proper weight to the DVA and SSA disability awards.

At bottom, Mr. Lechliter fails to recognize that the DVA and SSA disability determinations and the medical records in support of these awards do not establish that Mr. Lechliter was not able to perform his job as an intelligence officer assigned as a liaison to the German Ministry of Defense working out of the United States Embassy. To the contrary, the record demonstrates that Mr. Lechliter was able to satisfactorily perform the job. By his own admission, Mr. Lechliter acknowledged to the PEB that he was able to perform his "duties satisfactorily" and Mr. Lechliter's opinion was confirmed by his excellent Officer Evaluation Reports. Although Mr. Lechliter indicated in February 1999 that his ailments were "hindering" his performance, A.R. vol. III, 499, he failed to present evidence in the prior proceedings to prove that he was not performing his job in a satisfactory fashion at the time of his retirement. While Mr. Lechliter was no doubt concerned about his ability to perform another job in the future, his admissions regarding his ability to satisfactorily perform in the position he was holding at the time of his retirement and his willingness to continue working if the in-grade waiver had not been granted are sufficient to support the ABCMR's decision to reject Mr. Lechliter's contentions that he was not fit for duty based on the DVA and SSA awards.

Finally, the fact that the DVA and SSA awards could conceivably support a different conclusion is immaterial. The evidence upon which the ABCMR relied is the "type of evidence that a reasonable mind might accept as adequate to support the conclusion" that Mr. Lechliter was fit for duty. *Myers v. United States*, 50 Fed.Cl. 674, 696 (2001). "When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." *Id.* (quoting *Rose v. United States*, 35 Fed.Cl. 510, 514 (1996)).

### 2. Mr. Lechliter's Fitness for Future Duty

Mr. Lechliter contends that, although he may have been performing satisfactorily in his job prior at the time of his retirement, the ABCMR erred because it failed to consider whether he would have been able to perform different duties in the future. In

particular, Mr. Lechliter argues that the ABCMR was required to consider his fitness for future duty under Army Reg. 635–40 ¶¶ 3 –1(b) [9] and 3–2(b)(2), which is known as the "presumption of fitness rule." [10]

Mr. Lechliter argues that the evidence of his physical deterioration between 1997 and 1998, along with the DVA and SSA disability awards, demonstrate that he was unfit for future duty. Mr. Lechliter argues that, while he may have been satisfactorily performing his duties in his job, the job was an atypical job, and that he would have been unable to perform in a different job in the future that involved additional stress or hours. Pl.'s Br. 45. Because he was allegedly unfit for future duty, Mr. Lechliter contends he was entitled to a disability retirement.

The court finds that Mr. Lechliter's emphasis on *future* duty in his reading of the regulations is unsupported. The reference in Army Reg. 635–40 ¶ 3–1(b) to "future duties" is in the context of the "requirements on the Army to maintain and protect him or her during future duty assignments." Thus, the Army would only find a service member unfit if the Army determined that it was unable to avoid assigning that service member to positions that would threaten that service member's health. *See Hrdina v. United States*, 5 Cl.Ct. 17, 22 (1984) (In interpreting similar provisions in an Air Force regulation, the court stated: "the Air Force's responsibility to consider a member's health in future duty assignments speaks to an obligation to avoid those assignments which unnecessarily threaten the health of a member whose physical defects would not otherwise preclude him from reasonably (and safely) fulfilling the purposes of his employment on active duty. It is only when this last stated objective can no longer be realized that concerns of future assignability would require a judgment of unfitness.") Here, there is no evidence that Mr. Lechliter's conditions precluded him from all other colonel positions in the Army. As such, the reference to "future duties" in Army Reg. 635–40 ¶ 3–1(b) did not require the ABCMR to find that Mr. Lechliter was unfit for duty.

Similarly, the reference to "further duty" in the presumption of fitness rule, Army Reg. ¶ 3–2(b)(2), did not require the ABCMR to find that Mr. Lechliter was unfit for duty. This regulation provides that the presumption that a service member can be overcome where "an acute, grave illness or injury or other significant deterioration of the soldier's physical condition occurred immediately prior to, or coincident with processing for separation or retirement ... which rendered the soldier unfit for further duty." [11] The court does not read in the language of the regulation a requirement that, in order to be found fit for duty, a service member must be fit to perform in a different position in the future. Rather, the regulation refers to whether a soldier is "unfit for further duty," which the court interprets to mean continued duty within a service member's current position. [12]

9. Army Reg. 635–40 ¶ 3–1(b) provides, in relevant part: "The overall effect of all disabilities present in a soldier whose physical fitness is under evaluation must be considered. The effect will be considered both from the standpoint of how the disabilities affect the soldier's performance and the requirements imposed on the Army to maintain and protect him or her during *future* duty assignments." (emphasis added).

10. Army Reg. 635–40 ¶ 3–2(b)(2) provides, in relevant part: "When a soldier is being processed for separation or retirement for reasons other than physical disability, continued performance of assigned duty ... until the soldier is scheduled for separation or retirement, creates a presumption that the soldier is fit. ... The presumption of fitness may be overcome if the evidence establishes that—(a) The soldier was, in fact, physically unable to perform adequately the duties of his or her office ... for a period of time because of the disability .... (b) An acute, grave illness or injury or other significant deterioration of the soldier's physical condition occurred immediately prior to, or coincident with processing for separation or retirement ... and which rendered the soldier unfit for *further* duty." (emphasis added).

11. The government contends that this scenario does not apply to Mr. Lechliter's situation because, by Mr. Lechliter's own admission (Pl.'s Br. 44, Compl. ¶¶ 19–21), the deterioration in his health began more than a year prior to his retirement and therefore was not "immediately prior to [] or coincident with" his retirement.

12. In addition, it appears that part of Mr. Lechliter's concern with his future duties was based on his perceived inability to be promoted. For example, in his August 10, 1998 letter providing

Therefore, the court rejects Mr. Lechliter's contention that the ABCMR should have found him unfit for duty under Army Reg. 635–40 ¶¶ 3–1(b) and 3–2(b)(2).

### 3. Procedural and Evaluation Errors

■ Mr. Lechliter also alleges numerous errors throughout the process leading to the Army's determination of his fitness for duty. These allegations include, but are not limited to, the Army's failure to refer him for evaluation and treatment of a nervous condition based on the guidelines in the DVA's "Physician's Guide For Disability Evaluation Examination"; the failure of the Army to evaluate correctly or treat his hypertension; the failure of the MEB physician conducting the orthopedic examination to take proper range

of motion measurements; the failure of the PEB to provide a "rationale" in addition to its "reasons" for its fit-for-duty determination; the failure of his raters to provide him with a final retirement Officer Evaluation Report; the inclusion of improper comments in the MEB and PEB record; the failure of the PEB and the ABCMR to explicitly consider pain as an unfitting factor and to explicitly consider the overall effect of his ailments; the failure the PEB and ABCMR to provide him with a formal hearing as he had requested;[13] the failure of the ABCMR to consider evidence that his position in Bonn was relatively stress-free and therefore atypical of a future position he might be expected to take on[14]; and the ABCMR's failure to review all of his medical records.

input to the MEB and PEB, Mr. Lechliter stated: "I have always sought out challenging assignments.... My present, stable medical condition ... precludes this choice in the future, thereby eliminating any chance for promotion or premier jobs in my fields.... I therefore, firmly believe that my physical problems qualify me for a finding of 'unfit' and medical treatment." A.R. vol. IV, 216. The fact that Mr. Lechliter would not be able to perform "challenging" assignments because of his "stable medical condition" does not establish that there were no other positions available to him as an intelligence officer with the same stress-level as his Bonn position.

13. While the court does not address each of these procedural errors, because a significant portion of Mr. Lechliter's briefing is devoted to his claim that he was improperly denied a formal hearing by the PEB and the ABCMR, the court does address this issue. In terms of the ABCMR, under the regulations, it was within the discretion of the ABCMR not to provide a hearing. Army Reg. 15–185 ¶ 2–11 (2000) provides: "Applicants do not have a right to a hearing before the ABCMR. The Director or the ABCMR may grant a formal hearing whenever justice requires." Under the circumstances of this case, Mr. Lechliter has failed to show that the ABCMR abused its discretion in refusing to hold a hearing. The ABCMR thoroughly considered Mr. Lechliter's claims and made it clear to Mr. Lechliter that he had failed to produce evidence to undercut the PEB's ultimate conclusion, which Mr. Lechliter does not dispute, that he was able to perform the job to which he had been assigned. In such circumstances, there was no reason to hold a hearing to review again all of the evidence concerning Mr. Lechliter's various conditions.

In terms of the PEB, the court notes that Mr. Lechliter indicated in his letter of appeal to the PEB, "If needed, I request to appear before a Formal Board hearing to argue my case," A.R.

vol. I, 226; however he never sought the opportunity to present witnesses and to cross examine witnesses. The request was at best ambiguous as to whether he was stating an actual demand for a formal PEB or simply the right to make an "argument" before the PEB. The court has found nothing on the record that indicates that, had Mr. Lechliter believed he had demanded a formal PEB, he then followed up with the Army to obtain one. To the contrary, in his March 1999 letter to the IG, Mr. Lechliter complained about the MEB process and demanded a new MEB. He did not request a formal PEB hearing. It was not until he applied to the ABCMR that Mr. Lechliter raised the issue of a formal hearing before the PEB. A.R. vol. I, 65, 186. Therefore, the court concludes that Mr. Lechliter failed to request a formal PEB hearing and thus the failure to provide him with a formal PEB hearing did not violate Army regulations or his constitutional rights to due process. Under Army Reg. 635–40 ¶ 4–21(a), Mr. Lechliter could have had a hearing had he demanded one. On the DA Form 199 he signed on December 11, 1998 following the PEB's determination of his fitness for duty, Mr. Lechliter had the option to request a formal hearing by marking the "I do not concur and demand a formal hearing," but he did not do so. Mr. Lechliter did not demand a formal hearing and therefore the Army's failure to conduct a formal hearing did not violate Mr. Lechliter's rights under the regulations or the Constitution. The court does not reach Mr. Lechliter's contention that 10 U.S.C. § 1214 (providing for a hearing, if requested, where a member of the armed forces is found unfit for duty), is unconstitutional, as the Army regulations did not preclude Mr. Lechliter from receiving a formal hearing from the PEB regarding his fitness of duty finding.

14. See Pl.'s Resp. 39 ("[P]laintiff's wearing of a beard and civilian clothes, together with supporting statements from unit senior civilian members

The court finds that none of the errors alleged by Mr. Lechliter requires reversal of the ABCMR decision. It is well-settled that the doctrine of harmless error applies in military pay cases. *See Christian v. United States,* 337 F.3d 1338, 1343 (Fed.Cir.2003). Here, a review of the entire administrative record reveals that none of the errors that Mr. Lechliter has presented are sufficient to overcome the substantial evidence supporting the Army's decision in this case. For example, Mr. Lechliter relies upon Dr. Oxman's report to support his contention that the Army failed to properly evaluate all of his health problems. However, a careful review of that report does not support reversal of the Army's decision. After reviewing Mr. Lechliter's medical history and alleged errors made by the MEB and PEB in evaluating Mr. Lechliter's health problems, Dr. Oxman states at the conclusion of his report: "Colonel Lechliter's ability to perform his duties in a highly stressful environment, within a reasonable degree of medical certainty, was impaired and ... such an environment could have led to a further deterioration in his health." A.R. vol. II, 10. Importantly, Dr. Oxman does not state that Mr. Lechliter was unfit for the duties he had been assigned in Germany. Rather, he states that if Mr. Lechliter had been assigned highly stressful duties, his condition "could" have worsened perhaps to the point of rendering him unfit for duty.[15] As noted above, had Mr. Lechliter decided to stay in the military, it is possible that his condition "could" have worsened to the point where he was no longer fit for duty. However, absent evidence to support Mr. Lechliter's contention that he was in fact unfit for the work he was assigned, the errors Dr. Oxman identifies do not warrant reversal of the ABCMR's decision. The ABCMR had all of Mr. Lechliter's evidence and arguments before it and concluded that there was no reason to correct all of the errors identified. The ABCMR corrected several errors, but in the end concluded that nothing would alter the Army's conclusion that Mr. Lechliter was fit for duty when he retired and therefore that he was not entitled to a disability retirement.

The court agrees with the ABCMR that correcting all of the errors identified by Mr. Lechliter was not required. Most importantly, the court agrees that because there was substantial evidence supporting the Army's decision, correcting these errors would not change the Army's ultimate conclusion that Mr. Lechliter was capable of satisfactorily performing the job he held at the time of his retirement. Despite repeated attempts to obtain reversal of the PEB's fit for duty determination, Mr. Lechliter has never presented evidence to demonstrate that he was not satisfactorily performing the job to which he was assigned at the time of his retirement or that he could not continue to perform that job. In such circumstances, the errors Mr. Lechliter identifies are ultimately harmless.[16]

provides credible evidence of [the position's] atypical nature.... Plaintiff could set his own hours and was working fewer than 8 hours per day. He took off whenever he wished.").

**15.** The government contends that Mr. Lechliter's Bonn position was stressful, but in oral argument stated that it was not "highly" stressful so as to have presented a threat to Mr. Lechliter's health. The government also suggested that other positions with a similar stress level would have been available to Mr. Lechliter in the Army.

**16.** Moreover, the court may not grant to Mr. Lechliter the relief he seeks in any event. Mr. Lechiter does not seek a remand of the ABCMR's decision in order to correct the errors he has identified. Mr. Lechliter has stated his vehement opposition to a remand of his case to the ABCMR. Pl.'s Resp. 70–76. Instead he requests that this court hold a formal hearing and allow him to present witnesses and cross-examine the government's witnesses in connection with the relief he has requested. Pl.'s Resp. 64–69.

Contrary to Mr. Lechliter's desires, this court is not free to hold a de novo hearing on the merits of his case. As the government correctly argues under the standard set forth by the Supreme Court in *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the court must remand an administrative decision for correction of errors; it cannot correct those errors on its own or conduct a *de novo* hearing. "If the record before the agency does not support the agency action, if the agency has not considered all of the relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct *de novo* inquiry into the matter being reviewed and to reach its own con-

## CONCLUSION

For the reasons set forth above, the court **DENIES** the government's motion to dismiss, in part, for lack of subject matter jurisdiction; the court **GRANTS** the government's motion to dismiss, in part, for failure to state a claim upon which relief can be granted; the court **GRANTS** the government's motion for judgment upon the administrative record; the court **DENIES** the plaintiff's cross-motion for judgment upon the administrative record; and the court **DENIES** the plaintiff's motion for discovery, supplementation of the administrative record, and a hearing. The Clerk of the court is directed to enter judgment accordingly. Each party to bear its own costs.

**IT IS SO ORDERED.**

---

clusions based on such an inquiry." *Id.* Here, none of Mr. Lechliter's objections would satisfy the "rare circumstances" required under *Florida Power* for this court to conduct a *de novo* hearing. Mr. Lechliter has been able to present evidence in support of his claim and this evidence was considered by the ABCMR.